IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

vs. 2:12-CR-131

JACK ALLAN SCHAAP,

Defendant.

TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE THE HONORABLE RUDY LOZANO
UNITED STATE DISTRICT JUDGE
SEPTEMBER 26, 2012

FOR THE GOVERNMENT: Jill Rochelle Koster
U.S. Attorney's Office
5400 Federal Plaza
Hammond, Indiana 46320

FOR THE DEFENDANT: Paul G. Stracci
Alison L. Benjamin
Thiros & Stracci
200 East 90th Avenue
Merrillville, Indiana 46410
219-769-1600

Court Reporter: Kelly M. Fitzgerald, RMR, CRR
Official Court Reporter
5400 Federal Plaza, Suite 4082
Hammond, Indiana 46320
219-852-3616

Proceedings reported by stenotype. Transcript produced by computer-aided transcription.

DEPUTY CLERK: All rise. Court is now in session, Honorable Rudy Lozano presiding.

THE COURT: You may be seated.

(WHEREUPON, discussion was had off the record.)

MR. STRACCI: Your Honor, may I have just one more moment to speak with the government?

THE COURT: Sure.

MR. STRACCI: Thank you.

(WHEREUPON, discussion was had off the record.)

MR. STRACCI: Your Honor, I believe both parties are prepared to proceed.

THE COURT: You are?

MR. STRACCI: Yes, thank you.

THE COURT: This is the case of the United States of America versus Jack Allan -- I'll take a chance on that. Schaap?

THE DEFENDANT: Schaap. Thank you, sir. Yes, sir.

THE COURT: Hammond Criminal No. 2:12-CR-131. The defendant is present in person and with his attorneys, Mr. Paul Stracci and Ms. Alison Benjamin. The government is represented by its Assistant United States Attorney, Ms. Jill Koster.

Mr. Stracci, is it true, as I have been advised, that your client, the defendant, wishes to enter a plea of guilty to Count One of the information in this case?

MR. STRACCI: It is, Your Honor.

THE COURT: Mr. Stracci, I have received for my inspection two documents. They are both entitled plea agreement and, for all intents and purposes, are identical. Both of these documents are eight pages in length. One was electronically filed with the Court on the 18th day of September of the year 2012, and on the last page of that document appears printed signatures. The other one was received by the Court on that same date, the 18th day of September of the year 2012. At the conclusion of that document has written signatures.

Mr. Stracci, is the plea of guilty by the defendant being made pursuant to the plea agreement contained in these two documents?

MR. STRACCI: It is, Your Honor.

THE COURT: Mr. Schaap, I would appreciate it if you would stand, face this young lady, raise your right hand to be sworn.

(Defendant sworn.)

EXAMINATION

BY THE COURT:

Q. Mr. Schaap, there's going to be some rules that we're going to have to abide by, and if we can't abide by the rules, I'm going to stop the hearing, and we'll go to trial.

Rule No. 1, I have to hear you. That's probably not a

problem because you are used to speaking in public forums, but I want your voice to be up. If you want to, you can bring the microphone closer to you.

Two, I have to hear you. If I can't hear, then I don't know what to do.

You have to hear me. If you can't hear me, tell me. I'll raise my voice. Do you understand?

You have to understand what I'm asking you. If you don't understand what I'm asking you, tell me. I'll try to rephrase the question for you.

I want you to answer all of my questions out loud, verbally. Don't nod your head. Don't say mm-hmm, uh-uh, don't grunt, because I may not understand what you're saying. Do you understand?

A. I do.

Q. Lastly, if you have to talk to your attorneys, you know what this means in sports (indicating)?

A. Yes, sir.

Q. What does it mean?

A. Timeout.

Q. Just tell me timeout. I'll let you talk to them about any subject at all. The only thing I'm going to strongly recommend to you is that if you do that, whisper. And I think you've already been doing that at the beginning of this hearing.

I will also tell you that that microphone that's going to be in front of you, it's always hot. It's always amplifying. There's a button on the base. Push that button down and hold it down. It will stop amplifying. As soon as you let go, it starts to amplify again. Do you understand?

A. I do, sir.

Q. Are you ready to proceed?

A. Yes, sir.

Q. Do you have any questions at all?

A. No, sir.

Q. Mr. Schaap, do you understand that you are now under oath, and if you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or for making a false statement?

A. Yes, Your Honor.

Q. Please state your full name.

A. Jack Allan Schaap.

Q. Mr. Schaap, where do you live?

A. Porter County Jail right now.

Q. Okay. What is your home address?

A. Dyer, Indiana.

Q. And what is the address there?

A. 14706 West 90th Avenue.

Q. Are you a citizen of the United States?

A. Yes, sir, I am.

Q. How old are you?
A. 54 years old.
Q. What is the date of your birth?
A. October 1, 1957.
Q. And what is your Social Security number?
A. 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.
Q. Mr. Schaap, I'm also going to ask you to slow down a little bit.
A. Yes, sir.
Q. Because if you start talking fast, the faster she writes, she's like a helicopter. She'll take off. That's why we have the tower up there.
What is the extent of your education?
A. I have a Master's degree in education.
Q. Mr. Schaap, have you ever been treated for any mental illness or addiction to narcotic drugs of any kind?
A. No, sir, I have not.
Q. Are you presently under the influence of any drug or medication or alcoholic beverage of any kind?
A. No, sir, I am not.
Q. Mr. Schaap, have you received a copy of the information pending against you, that is the written charges made against you in this case, and have you fully discussed those charges and the case in general with your two attorneys?
A. Yes, I have, Your Honor.

Q. Are you fully satisfied with the counsel, representation and advice given to you in this case by Mr. Stracci and Ms. Benjamin as your attorneys?
A. Yes, I am.
Q. Mr. Schaap, do you understand that you have a constitutional right to be charged by an indictment of a grand jury but that you can waive that right in consent to being charged by an information of the United States Attorney?
A. Yes, I do.
Q. Do you understand that, instead of an indictment, this felony charge against you has been brought by the United States Attorney by the filing of an information?
A. Yes, I do, sir.
Q. Do you understand that unless you waive indictment you may not be charged with a felony unless a grand jury finds, by return of an indictment, that there is probable cause believing that a crime has been committed and that you committed it?
A. Yes, I do, sir.
Q. Was your right to being charged by an indictment explained to you earlier in front of a magistrate judge?
A. Yes, sir, it was.
Q. In fact, did you appear before magistrate judge Paul Cherry on September 19th of the year 2012?
A. Yes, sir, I did.

Q. Okay. You have to take my word. I'm looking at the date right now. Did he explain all of your rights with regards to waiver?
A. Yes, sir, he did.
Q. Were your attorneys present also?
A. Yes, sir, they were.
Q. At that time did he ask you what you wanted to do?
A. Yes, sir, he did.
Q. And what did you advise?
A. That I was going to make the plea and waive my right of a grand jury indictment.
Q. Did you agree to waive indictment?
A. Yes, I did.
Q. Okay. And did you execute a document to that effect?
A. Yes, sir, I did.
Q. And was that also executed by your attorneys?
A. Yes, sir, it was.
Q. And was it approved by Magistrate Paul Cherry?
A. Yes, sir, it was.
Q. Was that done knowingly and voluntarily?
A. Yes, sir, it was.

THE COURT: The Court finds that there was a waiver of indictment that was knowingly and voluntarily made by the defendant and was accepted by Magistrate Paul Cherry on the 19th day of September of the year 2012.

BY THE COURT:
Q. Mr. Schaap, I want you to turn to the document entitled plea agreement. And what I want you to do is I want you to go to page 3 of that document. And what I would like for you to do for me right now is I want you to read paragraph 7 and all of the subparagraphs under paragraph 7. I realize you may have done this before, but I want you to do it now, and read it to yourself quietly. If you have any questions while you're reading it, you may talk to your attorneys. Please let me know when you are done.
(Defendant complies.)
BY THE COURT:
Q. Mr. Schaap, have you read paragraph 7 and all of the subparagraphs under paragraph 7?
A. Yes, Your Honor, I have.
Q. Did you have occasion to read it earlier with your attorneys?
A. Yes, sir, I did.
Q. Do you fully understand all of it?
A. Yes, sir, I think I do.
Q. Are you in agreement with it?
A. Yes, sir, I am.
Q. And are you asking me to approve it as part of your plea agreement?
A. Yes, sir, I am.

Q. I want to talk with you about the terms of your plea agreement, Mr. Schaap. Let's start with paragraph 7(a). There you indicate that you want to plead guilty to Count One of the information in this case; is that correct?
A. Yes, sir, it is.
Q. And do you understand that that charges you with transportation with the intent to engage in criminal sexual activity? Is that correct?
A. Yes, sir, it is.
Q. That's in violation of a federal statute, namely, Title 18, United States Code, Section 2423(a); is that correct?
A. Yes, sir, it is.
Q. Mr. Schaap, why do you want to plead guilty to Count One of the information at this time?
(WHEREUPON, discussion was had off the record between counsel and defendant.)
THE DEFENDANT: Because I am indeed guilty.
BY THE COURT:
Q. And is that the reason that you want to plead guilty?
A. Yes, sir.
Q. Mr. Schaap, do you understand that this also agrees to forfeit your interest you may have in a computer and computer-related equipment seized by the United States of America and held by its agents and employees and that you

agree to hold --

THE COURT: Ms. Koster, again, I don't agree with the way you word this: Ms. Koster can hold you harmless for anything that he does but not anything at all?

MS. KOSTER: And that's how it's worded, Your Honor. He agrees to hold us harmless for any claims he has to the items that's been forfeited. If other people have claims, he --

THE COURT: You say harmless from any claims whatsoever in connection with the seizure.

MS. KOSTER: Any claims by him, Your Honor, yes.

THE COURT: But under this, assuming that somebody else has an interest in this computer, he's not going to hold them harmless of that?

MS. KOSTER: We understand that, Your Honor. He can't hold us harmless for somebody else's --

THE COURT: I can't require that. I'm not going to require that.

MS. KOSTER: We understand.

BY THE COURT:

Q. Mr. Schaap, you understand what you are saying, you will hold the government harmless from their taking of the computer, but it's only because of your interest, not anybody else's interest?

A. Yes, sir, I do.

THE COURT: Do you agree with that, Ms. Koster?
MS. KOSTER: I do, Your Honor.
BY THE COURT:
Q. Let's go on to subparagraph (b). Mr. Schaap, subparagraph (b) talks about what penalties, if any, you're facing in this case. Mr. Schaap, I have no idea at this time what sentence, if any, you're going to get in this case. I won't make that decision until after a presentence investigation report is prepared by the probation department, and you, your attorneys, and the government all have an opportunity to challenge that report. Right now what I'm going to do is I am going to tell you, based upon the statute that you're pleading guilty to and based upon the count of the information that you're pleading guilty to, what's the most that you could get, what's the least that you could get and obviously your sentence could be somewhere in between. Do you understand that?
A. Yes, sir, I do.
Q. I'm going to use some terms. One of the terms you're going to hear is a term called a special assessment. All that is is a fancy word for another kind of a fine. For each count that you're found guilty of, in addition to any other penalties that you may receive, you're also going to have to pay a $100 special assessment made payable to the United States of America. That's due and payable either at the time

of sentencing or before it. Do you understand that?
A. Yes, sir, I do.
Q. Second term you're going to hear is a term called supervised release. Have you ever heard of that before?
A. Yes, sir, I have.
Q. Supervised release is in addition to any term of imprisonment that I may give you. If I give you a term of supervised release, during that period of time, you must live your life under certain conditions set out by the Court. If you violate those conditions, the Court can revoke or take back the supervised release and then send you back to jail in addition to the time you've already served for the remaining term of supervised release. Do you understand that?
A. Yes, sir, I do.
Q. So do you understand that if I give you a term of supervised release the importance of following all of the conditions set out by the Court?
A. Yes, sir, I do.
Q. And, of course, you understand what can happen if you don't.
Next term you're going to hear is a term that they use in the law called a mandatory minimum term. What that basically means is that you have to serve at least a certain amount of time either of imprisonment and/or of supervised release. You understand that?

A. Yes, sir.

Q. Like everything else in the law, that's generally the rule. There are some exceptions to it, but they're very, very few. One of them is cooperation, and that may not be a factor in this case, but there is an exception for that. But at least for the 95, 98 percent of the cases, you have to serve at least that amount of time. Do you understand that?

A. Yes, sir, I do.

Q. In this case, based upon the statute that you're pleading guilty to and based upon the count of the information that you're pleading guilty to, the most that you could get would be life in prison, a fine of up to $250,000 or a combination of both, up to life supervised release and a $100 special assessment. Do you understand that?

A. Yes, sir, I do.

Q. In addition to that, we've already talked about forfeiture of this computer, and you're agreeing to do that. Do you understand?

A. Yes, sir.

Q. In addition to that, you also will be required to pay restitution to the victims of your crime. Do you understand that?

A. Yes, sir, I do.

Q. And do you understand what restitution is?

A. Yes, sir, I do.

Q. Paying back any loss that your victims may have incurred. Do you understand that?
A. Yes, sir, I do.
THE COURT: Now, I assume that the government so far has not computed the amount of restitution?
MS. KOSTER: We have not, Your Honor.
BY THE COURT:
Q. The government will have a certain amount of time to get that computed. Do you understand that?
A. Yes, sir.
Q. Okay. The least that you could get would be ten years in jail, no fine, five years of supervised release, no forfeiture, even though you're agreeing to it, and you still would have to pay restitution. That's mandatory. And a $100 special assessment. Do you understand that?
A. Yes, sir, I do.
Q. Now, I said no forfeiture, but obviously because you're agreeing to it, you'll probably get that. And, of course, your sentence could be somewhere between the minimum and the maximum as I have just described. Do you understand that?
A. Yes, sir, I do.
Q. Are you in agreement with that?
A. Yes, sir, I am.
Q. Okay. Let's go on to subparagraph (c). Subparagraph (c) is an agreement that you have with the government. And when I

say the government, Mr. Schaap, I'm talking about the United States Attorney's Office for the Northern District of Indiana. They're the ones that are committing themselves to you right here. You also have an agreement by other jurisdictions, which I assume your attorney has talked to you about?
A. Yes, sir.
Q. But that's not binding insofar as this agreement is concerned. And what all of these jurisdictions are saying is that in exchange for your plea of guilty and your being found guilty of this information, they're not going to press any additional charges as a result of these events that you're talking about. Do you understand that?
A. Yes, sir, I do.
Q. And that includes -- let me see if I get them all -- the Northern District of Illinois, the Western District of Michigan, Lake County Prosecutor's Office, Will County Prosecutor's Office, Michigan Wexford County Prosecutor's Office. And when I said Will County, I'm talking about Illinois. You understand that?
A. Yes, sir, I do.
Q. Okay. And I don't know whether your attorneys have that in writing or not, but these jurisdictions have agreed also, if you're found guilty of this charge, not to prosecute you any further; is that correct?
A. That is correct.

Q. Are you in agreement with that?
A. Yes, sir, I am.
Q. Subparagraph (d), Mr. Schaap, deals with some agreements that you and the government have made to make some recommendations to the Court that are not binding upon the Court. You understand what that means, don't you?
A. That is correct, sir.
Q. You're going to make the recommendations, but I don't have to follow them. I can say to you, thank you very much; I am not going to follow them. And if I don't follow them, not only will I not follow them, I will not reject this plea agreement, nor will I allow you to withdraw your plea of guilty. Do you understand that?
A. Yes, sir, I do.
Q. Before we talk about these nonbinding recommendations, let me explain to you that in this case your sentence in part is going to be decided by the United States Sentencing Guidelines promulgated by the United States Sentencing Commission. You understand that?
A. Yes, sir, I do.
Q. The reason for that is these guidelines became effective on November 1, 1987. The crime to which you're pleading guilty to occurred after that. Do you understand that?
A. Yes, sir.
Q. Now, I said your sentence in part was going to be decided

by these guidelines. Let me explain that to you further. Mr. Schaap, I don't have to follow these guidelines. I do have to apply them to your case. If, after applying them to your case, a guideline range is decided in your case, if I find that guideline range to be fair and reasonable, you'll probably be sentenced within that guideline range. If I do not find it to be fair and reasonable, I have the discretion to go higher or to go lower than that guideline range. You understand that?

A. Yes, sir, I do.

Q. So although I have to apply them to your case, I don't have to follow the guidelines. They're only advisory. Do you understand that?

A. Yes, sir, I do.

Q. Have you and your attorneys talked about how the guidelines operate?

A. Yes, we did.

Q. You understand that under the guidelines, before the Court can decide a sentence for an individual, it has to take numerous factors into consideration. With regards to each of these factors, the Court will allow input from you, from your attorney, from the government and other individuals, but it will be the Court's and only the Court's decision that will be the final decision on each of these factors. Do you understand that?

A. Yes, sir, I do.
Q. Once all of these factors are taken into consideration, a guideline range will be decided in your case. Again, if I find that guideline range to be fair and reasonable, you'll probably be sentenced within that guideline range. If I do not find it to be fair and reasonable, I have the discretion to go higher or lower. Do you understand that?
A. Yes, sir, I do.
Q. Some of these factors that I have to consider include, but are not limited to, one, whether or not you have a prior criminal record. Do you understand that?
A. Yes, sir.
Q. If young ladies underage are involved, how many young ladies. Do you understand that?
A. Yes, sir.
Q. Whether or not these young ladies were at a vulnerable age or vulnerable condition. Do you understand that?
A. Yes, sir, I do.
Q. Was any force involved may be a factor. Do you understand that?
A. Yes, sir, I do.
Q. Was more -- strike that.
What role you played in the offense. You understand that?
A. Yes, sir.

Q. And another factor and a very, very important factor is whether or not you have accepted responsibility for the commission of the crime to which you're pleading guilty. That's an important factor because, depending upon the circumstances, you can either get a minus 2 or a minus 3 points. The lower the number of points, the smaller the guideline range. That's in your favor. Do you understand that?
A. Yes, sir, I do.
Q. Now, you may ask, how do I show acceptance of responsibility? It's very simple. One, by continuing to admit all of your involvement in the offense, including relevant conduct. Do you understand that?
A. Yes, sir, I do.
Q. Did you and your attorney talk about that?
A. Yes, sir, I did.
Q. Have any questions about that?
A. No.
Q. Two, by not giving a different story of what occurred; three, by not being involved in any further crimes; and, four, by not attempting to withdraw your plea of guilty.
A. Yes.
Q. These are only some of the factors. I could be here for months talking to you about the different guidelines. Any questions about the guidelines or how they operate?

A. Yes, sir, I understand.
Q. Mr. Schaap, let me go back to the penalties you were facing. One of the things I didn't say to you is that in the event that your guidelines come below the mandatory minimum, the mandatory minimum or the statute is going to trump the guidelines. Do you understand that?
A. Yes, sir, I do.
Q. Okay. Let's go back to these nonbinding recommendations. First nonbinding recommendation that you and the government are going to make is that you should get the maximum deduction of points for acceptance of responsibility. Do you understand that?
A. Yes, sir, I do.
Q. Now, the government is going to make this recommendation as long as you continue to demonstrate acceptance of responsibility. You start lying, you start giving different stories about what occurred, you start being involved in other crimes or you start attempting to withdraw your plea of guilty, they don't have to make that recommendation. Do you understand that?
A. Yes, sir, I do.
Q. And if they don't make the recommendation for those reasons, not only will they not make the recommendation, you will not be allowed to withdraw your plea of guilty. Do you understand that?

A. Yes, sir, I do.
Q. Even if you, your attorney and the government all recommend that you get acceptance of responsibility, who makes the final decision?
A. You do, sir.
Q. That's right. And I may agree with you and I may not. I will have the final say. Do you understand that?
A. I sure do.
Q. Are you in agreement with that?
A. Yes, sir, I am.
Q. Second nonbinding recommendation that's going to be made in this case deals with the guidelines. And the government and you are saying that guideline 2G1.3 is going to apply. Did you and your attorney go over that section?
A. Yes, sir, we did.
Q. And you are going to be making some recommendations to the Court, again, that are not binding; one, that a two-level enhancement under Guideline Section 2G1.3(b)(1)(B) apply because the minor was in your custody, care and supervisory control. Do you understand that?
A. Yes, sir, I do.
Q. Are you in agreement with that?
A. Yes, sir, I am.
Q. Okay. And, again, you understand when there's an enhancement, that means that that affects your guidelines by

increasing it?
A. Yes, sir, I do.
Q. Okay. Second nonbinding recommendation is that a two-level enhancement under Guideline Section 2G1.3(b)(3) apply because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce and facilitate the travel of the minor to engage in a prohibited -- or in prohibited sexual conduct. Do you understand that?
A. Yes, sir, I do.
Q. And do you agree with that?
A. Yes, sir, I do.
Q. Okay. Finally, the third nonbinding recommendation that's going to be made in this case is going to be that a two-level enhancement applies under 2G1.3(b)(4) apply because the offense involved the commission of a sex act or sexual contact.
A. Yes, sir, I do.
Q. You agree with that also?
A. Yes, sir, I do.
Q. Okay. Let's go on to the third nonbinding recommendation. And there you and the government are going to say and tell the Court -- let me back up.
With regards to these recommendations under 2G1.3(b), you understand that I will have the final say. You're making

recommendations, but I may not agree with the recommendations you make. Do you understand that?
A. Absolutely, sir.
Q. And I will have the final say on that.
A. Absolutely.
Q. Okay. Now, let's go on to that subsection 3. There you and the government are going to tell me what you think a fair sentence would be given all the facts in this case. And you're going to say that's going to be ten years. Do you understand that?
A. Yes, sir, I do.
Q. Again, you understand that I am going to have the final say on that and won't make that decision until after a presentence investigation report is complete and I have all the information regarding the events and the case in general. Do you understand that?
A. I understand that, sir.
Q. Are you in agreement with that?
A. Yes, sir, I am.
Q. Okay. Let's go on to the fourth nonbinding recommendation. There the government and you are going to recommend that the Court order as a mandatory condition of supervised release that you register as a sex offender and comply with the state sex offender registration requirements pursuant to Title 18, United States Code, Section 3583(d) and

Title 42, United States Code, Section 16913. You've been advised and understand that under the Sex Offender Registration and Notification Act, a federal law, you must register and keep the registration current in each of the following jurisdictions: The location of your residence, the location of your employment, and if you're a student, the location of any school that you might be going to. And you understand that such registration would require that you provide information that includes your name, residence address and names and addresses of any places where you will be an employee or student. You also understand that you must update the registration not later than three business days after any change in name, residence, employment or student status. And, finally, you understand that failure to comply with these obligations may subject you to prosecution for failure to register under federal law, Title 18, United States Code, Section 2250, which is punishable by a fine and/or imprisonment. Do you understand that?

A. Yes, sir, I do.

Q. You further agree that as long as you remain on supervised release, you will provide written documentation as often as requested by your assigned probation officer and any sex offender registration that -- I'm sorry -- that any sex offender registration remains in good standing.

A. Yes, sir, I do.

Q. Are you in agreement with that?
A. Yes, sir, I am.
Q. Okay. Let's go on to subparagraph (e). There, Mr. Schaap, we're talking about appeals. Do you understand that in all criminal cases a defendant has a right to appeal his conviction and/or sentence in a case?
A. Yes, sir, I do.
Q. In this case you have acknowledged that I have the jurisdiction and authority to sentence you up to the maximum provided for by the statute. Remember you and I talked about that before? That was life imprisonment, a fine of up to $250,000 or a combination of both of those, up to life supervised release, restitution, forfeiture in this case and a $100 special assessment.
A. Yes, sir, I do.
Q. Mr. Schaap, what you're basically doing in this paragraph is you're giving up all of your rights to an appeal. There's some rights you don't give up, like jurisdiction. But for all practical purposes, you're giving them all up. So down the road, if you don't like the sentence that I give you, if you don't like some of my rulings, you're not going to be able to tell Ms. Benjamin or Mr. Stracci, that judge went wild on me, I want to appeal, because you will have given up that right. Do you understand that?
A. I do, sir.

Q. Do you understand that that includes incompetence of counsel except as it relates to this waiver and/or its negotiation?
A. Yes, sir, I do.
Q. You also understand that the government in this case is not giving up their right to an appeal?
A. Yes, sir, I do.
Q. Are you sure this is what you want to do?
A. Yes, sir, it is.
Q. Have you talked to your attorneys about it?
A. Yes, sir, I have.
Q. Have they answered all of your questions?
A. Yes, sir, they have.
Q. Are you doing this knowingly and voluntarily?
A. Yes, I am.
Q. Do you have any questions of the Court?
A. No, sir, I do not.
Q. And are you asking me to approve it as part of your plea agreement?
A. Yes, sir, I am.
Q. Mr. Schaap, there's also some paragraphs, some statutes at the end of that paragraph. Did you and your attorney talk about those statutes with regards to appeal?
A. Yes, sir, we did.
Q. Have any question about those?

A. No, sir, I do not.
Q. Okay. Let's go on to subparagraph (f). There what you're doing is that you're giving up your right to receive any further records, reports or documents regarding the investigation or prosecution of your case. Do you understand that?
A. Yes, sir, I do.
Q. Again, down the road, you're not going to be able to tell Mr. Stracci, I want to get a copy of a tape recording, or, I want to get a copy of a statement that was made. Do you understand that?
A. Yes, sir, I do.
Q. You understand that the government is not giving up their rights to receive any further records, reports or documents?
A. I understand that.
Q. Sure this is what you want to do?
A. Yes, sir, I do.
Q. Are you doing it knowingly and voluntarily?
A. Yes, sir, I am.
Q. Talk to your attorneys?
A. I have.
Q. Did they answer all of your questions?
A. Yes, sir, they did.
Q. Have any questions of the Court?
A. No, sir.

Q. Are you doing it knowingly and voluntarily?
A. Yes, sir, I am.
Q. And are you asking me to approve it as part of your plea agreement?
A. I am, sir.
Q. Okay. Let's go on to subparagraph (g). There we're talking about that restitution. And you understand that the Court can order you to pay full restitution for any victims' compensable losses in the case as defined in subsections (b)(3) and (c) of Title 18, United States Code, Section 2259(a) and that this may be proved by the United States Attorney or stipulated to by the parties?
A. Yes, sir, I understand.
Q. You understand that your attorneys are going to have an opportunity to argue whatever the government says you owe in restitution and that the Court will make a final decision?
A. I understand, sir.
Q. And you understand that today, or even at the time of your sentencing, the government may not have the amount of restitution decided. They will be given an opportunity to compute that, give it to your attorneys and to bring it to court. Do you understand that?
A. I understand that.
Q. And, of course, at any time you can agree and work it out with the victims. You understand that?

A. Yes, sir.
Q. Are you in agreement with that?
A. Yes, sir, I am.
Q. And what you're saying is you're agreeing to an entry of restitution pursuant to Title 18, United States Code, Section 2259 requiring you to pay that amount?
A. Yes, sir.
Q. Okay. Let's go on to subparagraph (h). There we're talking about that computer and computer-related equipment. You're agreeing to forfeit, in other words, give up any rights you may have in that computer?
A. Yes, sir.
Q. And you're also agreeing to hold harmless the government for anything that they did with regards to taking this computer from you?
A. I am, sir.
Q. But it only involves you. It doesn't require third parties?
A. Correct, sir.
Q. And you agree to give up all constitutional and statutory challenges to the apprehending of this computer and taking it. Do you understand?
A. Yes, sir, I do.
Q. And you agree to take any steps reasonably necessary to help the government get the computer?

A. Yes, sir.
Q. Okay. Are you in agreement with that?
A. Yes, sir, I am.
Q. Finally, subparagraph (i), that talks about what happens, Mr. Schaap, if you violate any of the terms of the plea agreement, such as the -- your continuing obligation to demonstrate acceptance of responsibility.
A. Yes, sir. Yes, sir.
Q. Government can tell me, one, to declare the agreement null and void, no good. You can throw it away. And then they can prosecute you for any and all crimes; and/or two, to make a determination that you breached the terms of the agreement, in which case you lose the benefit of all of the nonbinding promises made by the government.
A. Yes, sir.
Q. Are you in agreement with this?
A. I am, sir.
Q. Mr. Schaap, are those the terms of your plea agreement with the government as you understand them?
A. They are, sir.
Q. Has anyone, including your own lawyer, any lawyer for the government, any government agent or anyone else made any other or different promise or assurance to you of any kind in an effort to induce or cause you to enter a plea of guilty in this case?

A. No, they have not, sir.
Q. Does your willingness to plead guilty result from prior discussions between the government lawyer and you and your lawyers?
A. I didn't understand that question.
Q. Mr. Schaap, you have a plea agreement; is that correct?
A. Yes, sir.
Q. Where did you get it from?
A. It came from --
Q. Did they talk to you?
A. -- my attorneys, yes.
Q. Did you come to an agreement?
A. I sure did.
Q. Where did your attorney get it from?
A. The U.S. Attorney.
Q. Did they talk about it?
A. I believe so.
Q. Did they come to an agreement?
A. Yes, sir, they did.
Q. Listen to my question again.
Does your willingness to plead guilty result from prior discussions between the government lawyer and you and your lawyer?
A. Yes, sir, they did.
Q. Okay. Has anyone, including your own lawyer, any lawyer

for the government, any government agent or anyone else attempted in any way to force you to plead guilty in this case?

A. No, sir, they have not.

Q. Do you understand that the offense to which you're pleading guilty is a felony offense?

A. Yes, sir, I do.

Q. Do you further understand that if your guilty plea is accepted you will be adjudged guilty of that offense?

A. Yes, sir, I do.

Q. Do you further understand that such adjudication may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess any kind of firearm?

A. Yes, sir.

THE COURT: Ms. Koster, are there any crime victims related to the crimes charged who are to be notified of their rights pursuant to the Justice for All Act of the year 2004 as codified in Title 18, United States Code, Section 3771?

MS. KOSTER: Yes, Your Honor.

THE COURT: Has the statute been complied with?

MS. KOSTER: Yes, Your Honor.

BY THE COURT:

Q. Mr. Schaap, do you recall earlier you and I talked about the penalties that you were facing in this case?

A. Yes, sir.
Q. I told you that based upon the statute that you were pleading guilty to and based upon the information that you were pleading guilty to what was the most that you could get, what was the least that you could get and that your sentence could be somewhere in between? Do you recall that?
A. Yes, sir, I do.
Q. Do you need me to repeat that again?
A. No, sir.
Q. Do you have any questions with regards to that?
A. No, sir, I do not.
THE COURT: Counsel, do either of you see any need for any repetition or further explanation of minimum or maximum penalties?
MR. STRACCI: No, Your Honor.
MS. KOSTER: No, Your Honor.
BY THE COURT:
Q. Mr. Schaap, have you and your attorney talked about how the -- your attorneys. Excuse me if I say singular. I mean plural.
Have you and your attorneys talked about how the Sentencing Commission guidelines apply to your case?
A. Yes, we have.
Q. Do you understand that the Court will not be able to determine the guideline sentence for your case until after the

presentence report has been completed, and you and the government have had an opportunity to challenge the facts reported by the probation officer?
A. Yes, sir.
Q. Do you further understand that after it has been determined what guidelines apply to a case, the judge has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines?
A. Yes, sir, I do.
Q. Do you further understand that in this case, under some circumstances, the government may have a right to appeal any sentence that I may impose, but that you have, for all practical purposes as discussed with you earlier, waived all of your rights to an appeal?
A. I understand that, sir.
Q. Do you further understand that if I accept your plea of guilty and your plea agreement and the sentence is more severe than you expected you will still be bound by your plea and will have no right to withdraw it?
A. Yes, sir, I do.
Q. Do you further understand that if I accept your plea of guilty and your plea agreement but do not accept any of the sentencing recommendations in your plea agreement you will still be bound by your plea and will have no right to withdraw

it?

A. Yes, sir, I do.

Q. And, finally, do you understand that parole has been abolished, and if you are adjudged guilty and sentenced in accordance with your plea agreement, you will never be released on parole. There is no more parole. Do you understand that?

A. Yes, sir, I do.

Q. Okay. Mr. Schaap, do you understand those possible consequences of your plea?

A. Yes, sir.

Q. Okay.

THE COURT: Before I go any further, Ms. Koster, I apologize. I didn't ask you to introduce the young man at counsel table.

MS. KOSTER: Your Honor, this is special agent Matt Chicantek from the FBI. He's the case agent.

BY THE COURT:

Q. Mr. Schaap, has anyone, including your own lawyer, any lawyer for the government, any government agent or anyone else made any prediction, prophecy or promise to you as to what your precise sentence will be?

A. No, they have not.

Q. Do you understand that you have a right to plead not guilty to any offense charged against you and to persist in

that plea?
A. Yes, sir, I do.
Q. Do you understand that you would then have a right to a trial by jury, during which you would also have the right to the assistance of counsel for your defense, the right to present evidence at a jury or bench trial, the right to see and hear all of the witnesses and have them cross-examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in your defense?
A. I understand, sir.
Q. Do you understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial, and you will have waived or given up your right to a trial, as well as those other rights associated with a trail as I have just described to you?
A. I understand, sir.
Q. Do you further understand that if you plead guilty you will have to waive or give up your right not to incriminate yourself because I may ask you questions about what you did in order to satisfy myself that you are guilty as charged, and you will have to acknowledge your guilt?
A. Yes, sir, I understand.

Q. Now, Mr. Schaap, I want to inform you of the charge to which you're entering a plea of guilty. Do you understand that Count One of the information in this case charges you with the crime of transportation of a minor with the intent to engage in criminal sexual activity?
A. Yes, sir I do.
Q. Do you further understand that the essential elements of that offense, in other words, what the government would have to prove at trial, are: First, that you transported Jane Doe from the State of Indiana to the State of Illinois and from the State of Indiana to the State of Michigan; second, that you did so with the intent that Jane Doe engage in sexual activity for which you can be charged with a criminal offense; and, third, that Jane Doe was under the age of 18 years at that time?
A. Yes, sir.
Q. Pardon?
A. Yes, sir.
Q. Mr. Schaap, the information also charges you with a violation of Title 18, United States Code, Section 2: Any person who aids, abets, counsels, commands, induces or procures the commission of a crime is guilty of that crime. In order for you to be found guilty of aiding and abetting the crime charged in Count One as a violation of Title 18, United States Code, Section 2423(a), the government would have to

prove that you knowingly associated yourself with that criminal venture, participated in it and tried to make it succeed.

A. Yes, sir, I understand.

Q. Now, Mr. Schaap, do you understand the charge to which you're entering a plea of guilty?

A. Yes, sir, I do.

Q. Mr. Schaap, I want you to take a moment, get your thoughts together. You may want to talk to your attorneys for a second. And then tell me in your own words what happened and why are you guilty of Count One of the information in this case.

(WHEREUPON, discussion was had off the record between counsel and defendant.)

THE DEFENDANT: Your Honor, in June of 2012, on two occasions, I caused Jane Doe to be bought from the Northern District of Indiana to Illinois. In July of 2012, I caused Jane Doe to be brought from the Northern District of Indiana of Indiana to Michigan with the intent to engage in sexual activity, which violated Michigan law. At the time I was Jane Doe's pastor and superintendent of the school she was attending. And at that time she was under the age of 18 years.

BY THE COURT:

Q. Let's back up a little bit, okay.

A. Please.
Q. You gave me the dates when it occurred, and you said in the Northern District of Indiana. Where in the Northern District of Indiana?
A. Excuse me just a moment.
(WHEREUPON, discussion was had off the record between counsel and defendant.)
THE DEFENDANT: If I understand the question, Your Honor, I had caused her to be transported from Hammond, Indiana to Crete, Illinois.
BY THE COURT:
Q. Okay. Hammond, Indiana is in the Northern District of Indiana; is that correct?
A. That is correct.
Q. Okay. And Crete, Illinois is in the Northern District of Illinois, I think?
A. That is correct.
Q. Okay. You also told me that you went from the Northern District of Indiana to Michigan. Where in the Northern District of Indiana did you do that?
A. She was --
Q. Is that Hammond again?
A. Yes, from her home area in the Valparaiso area.
Q. Okay. Valparaiso, is that also in the Northern District of Indiana?

A. Yes, sir, it is.
Q. Okay. And where in Michigan did you --
A. Western Michigan, near Cadillac, Michigan, Wexford County.
Q. Now, when you took Jane Doe from the Northern District of Indiana to both the Northern District of Illinois and to Michigan, I think it's the Western District of Michigan, did you do that knowingly and voluntarily?
MR. STRACCI: Your Honor, in this case, caused her to be taken.
THE COURT: Or caused her to be taken. I'm sorry. Thank you, Mr. Stracci.
MR. STRACCI: Certainly.
THE DEFENDANT: Right.
(WHEREUPON, discussion was had off the record between counsel and defendant.)
MR. STRACCI: Your Honor, would you repeat the question, please?
THE COURT: I'm trying to remember what my question was, Mr. Stracci.
MR. STRACCI: Sorry.
THE COURT: You interrupted me.
MR. STRACCI: I apologize. But I think that what we can say is that he caused her to be transported from Valparaiso, Indiana to Wexford County.

BY THE COURT:
Q. When you had Jane Doe taken to Illinois or to Michigan.
A. Yes, sir.
Q. Did you do it or did you have somebody else do it?
A. I had somebody else do it.
Q. Okay. And was the purpose of having her taken to both Illinois and to Michigan on separate occasions, was that done for the purpose of engaging in sexual activity with her?
(WHEREUPON, discussion was had off the record between counsel and defendant.)
THE DEFENDANT: Yes, sir, that is the case in Michigan.
BY THE COURT:
Q. How old was Jane Doe when this occurred?
A. 17 years old.
Q. Okay. And did you, in fact, engage in sexual activity both in Illinois and in Michigan?
(WHEREUPON, discussion was had off the record between counsel and defendant.)
THE DEFENDANT: I engaged in sexual conduct with her, yes, sir.
BY THE COURT:
Q. Did you know that was against the law?
A. No, sir, I did not.
Q. Okay.
A. Excuse me just a moment.

(WHEREUPON, discussion was had off the record between counsel and defendant.)

THE DEFENDANT: Your Honor, I understand responsibility I had as her leader. I'm fully responsible as her leader. I was not aware of the law or the criminal sections or the codes. I was aware of the conduct of my behavior was not only unprofessional, it was a sin. It was wrong because I was --

BY THE COURT:

Q. Have you come to find out that it was against the law?

A. Then I found out there was a criminal code also, but I did not know the code at the time, sir.

Q. Did you find out that you violated those codes?

A. Absolutely.

Q. Both for Indiana and Michigan?

A. Yes, sir.

Q. And Illinois?

A. Yes, sir.

Q. Okay. You say you were her spiritual and --

A. I was her pastor, and I was the superintendent of the private school she attended.

Q. And did you do this as a result of your contact with her as pastor and superintendent of schools?

A. Yes, sir. I was counseling her at the time.

Q. Okay.

(WHEREUPON, discussion was had off the record between

counsel and defendant.)

BY THE COURT:

Q. And, again, you did all of this with the intent to engage in sexual activity for which you could be charged with a criminal offense?

A. Yes, sir.

Q. Okay. Anything else you want to add?

A. No, sir.

THE COURT: Mr. Stracci?

MR. STRACCI: Nothing.

THE COURT: Ms. Benjamin, I'm not trying to shortchange you. I think Mr. Stracci is lead counsel; is that correct?

MS. BENJAMIN: Absolutely.

THE COURT: I don't want to get in trouble.

MR. STRACCI: Only in public, Your Honor.

THE COURT: I know who the smarter one is.

MR. STRACCI: There you go. Absolutely.

THE COURT: Mr. Schaap, I want you to take a look at Ms. Koster because I'm going to ask Ms. Koster what, in summary, are the facts that the government would be prepared to prove at trial as to the count of the information to which you're intending to plead guilty to. I want you to listen very carefully to Ms. Koster because when she finishes, I'm going to ask you whether or not you agree with everything she says, and if you don't agree with everything she says, what

you disagree with. Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: So listen very carefully.

Ms. Koster, what, in summary, are the facts that the government would be prepared to prove at trial as to the count of the information that this defendant intends to plead guilty?

MS. KOSTER: Your Honor, if the count in the information went to trial, the government would prove that on three separate occasions between June 1, 2012 and July 30, 2012, the defendant caused the victim, referred to in the information as Jane Doe, to be transported in interstate commerce.

The first such trip occurred on or about June 20, 2012, when Jane Doe was 16 years old. The evidence would show that once alone with Jane Doe in Illinois on that trip, the defendant engaged in conduct that violated Illinois law, specifically 720 ILCS 5/11-1.20(a)(4).

The second trip occurred on or about June 27, 2012, when Jane Doe was 17 years old. Again, the evidence would show that once alone with Jane Doe in Illinois, the defendant engaged in conduct that violated Illinois law, specifically 720 ILCS 5/11-1.20(a)(4).

The third trip was to Michigan, and it took place between on or about July 10, 2012 and on or about July 13, 2012.

While alone with Jane Doe in Michigan on those dates, the defendant engaged in conduct that violated Michigan law, specifically MCLS 750.520d(1)(e).

The government would prove up the occurrence of those trips and the defendant's intent to engage in criminal sexual activity when he caused Jane Doe to be transported by presenting witness testimony from Jane Doe and others describing the nature of the defendant's relationship and his contact with Jane Doe throughout the relevant time frame.

The government would also prevent -- present, excuse me, defendant's cellular telephone records obtained via court order which identified the cellular towers through which defendant sent and received calls while in Illinois and Michigan and also the dates and times of those calls and of the large number of text messages exchanged between the defendant and Jane Doe between June 21st and July 21, 2012.

In addition, we would present electronic evidence from the devices seized from defendant and others, which included photographs taken featuring the defendant and Jane Doe together in Illinois and in Michigan and evidencing their relationship, and text messages between the defendant and Jane Doe and others.

The government would also establish that throughout the relevant time frame defendant held a position of trust, authority or supervision vis-à-vis Jane Doe as a result of his

position as the pastor of the Hammond Baptist Church and the superintendent of the Hammond Baptist School, both of which Jane Doe had attended regularly throughout her life.

And I would note, Your Honor, that under Section 2 of 18 U.S.C., the law allows the government to charge someone, whoever -- the law states whoever willfully causes an act to be done, which, if directly performed by him or by another, would be an offense against the United States --

THE COURT: Ms. Koster, slow down a little bit.

MS. KOSTER: Sorry, Judge.

Whoever willfully causes an act to be done, which, if directly performed by him or another, would be an offense against the United States, is punishable as a principal. You earlier, Your Honor, read the portion of 18 U.S.C. Section 2 that deals with aiding and abetting, but we would note there's also a second section that covers causing an act to occur, and the evidence in this case would show that the defendant caused the victim to be transported in interstate commerce. And when he did that, he did it with intent to engage in criminal sexual activity with her in Illinois and in Michigan. As the Court has noted, the victim was transported from the Northern District of Indiana to Illinois and to Michigan.

And while, Your Honor, that's not a summary of all of the evidence the government would present, I think for today's purposes that satisfies the elements of the crime.

BY THE COURT:
Q. Mr. Schaap, did you listen and pay close attention to the government's summary of facts constituting the crime charged?
A. Yes, I did.
Q. Did you -- do you agree with the government's summary of facts?
A. Yes, I do.
Q. Any part of it you disagree with?
(WHEREUPON, discussion was had off the record between counsel and defendant.)
THE DEFENDANT: I understand and I accept and I agree.
BY THE COURT:
Q. Okay. You agree with her?
A. Yes, sir, I do.
Q. Any part of it you disagree with?
A. No, sir.
Q. And you agree there were three occasions, at least that Ms. Koster talked about?
A. There were no more than three occasions, sir, yes.
THE COURT: Counsel, are both -- are all three of you satisfied that the defendant is making a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense?
MR. STRACCI: Defense is satisfied.
MS. KOSTER: Yes, Your Honor.

THE COURT: Mr. Schaap, how do you now plead to Count One of the information in this case, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: It is the finding of the Court in the case of the United States of America versus Jack Allan Schaap, that the defendant, Jack Allan Schaap, is fully competent and capable of entering an informed plea and that his plea of guilty to the charge contained in Count One of the information is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. This plea is therefore accepted, and the defendant is now adjudged guilty of that offense. I am deferring my decision on acceptance or rejection of your plea agreement until after I've had an opportunity to study the presentence report.

Do you understand?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Mr. Schaap, a written presentence report will be prepared by the probation office to assist me in sentencing. You will be required to give information for the report, and your lawyer may be present if you wish. I'll advise you at the sentencing hearing whether I accept or reject your plea agreement, and you and your lawyer shall be -- you and your lawyers shall be afforded the opportunity to speak on your behalf at the sentencing hearing. The Court

shall permit you and your lawyers to read the presentence report before the sentencing hearing and, in fact, a copy of that report will be given to you. Do you understand?

THE DEFENDANT: Yes, sir, I do.

THE COURT: I therefore refer this defendant to the probation office for a presentence investigation and report pursuant to the Federal Rules of Criminal Procedure 32(c)(1).

Mr. Stracci, right behind you, there's a gentleman from the probation department. I would appreciate it if before you and Ms. Benjamin leave the courthouse today you make arrangements with him to get him the information necessary for preparation of the presentence investigation report.

MR. STRACCI: That's already been done, Your Honor.

THE COURT: And, Mr. Stracci, Ms. Benjamin and Ms. Koster, I am also issuing an order regarding presentence procedures. I expect all of you to read that order and comply with it. I expect all of you on a timely basis to provide information to the probation department so that a presentence investigation and report may be completed, and also on a timely basis and in writing, advise the probation department if you have any objections to the presentence investigation report so that if there are any objections, appropriate procedures may be taken. Do each of you understand?

MS. KOSTER: Yes, Your Honor.

MR. STRACCI: Yes, Your Honor.

THE COURT: And, Counsel, do you understand that failure to abide by that order may result either in the waiver of an issue and/or sanctions?

MR. STRACCI: Yes, Your Honor.

MS. KOSTER: Yes, Your Honor.

THE COURT: Ms. Koster, you're smiling. There is a deficit in the country right now. I'll be more than happy to take any contributions that I can.

Disposition date for sentencing is set for January 8th of the year 2013 at 2:00 in the afternoon. Mr. Stracci and Ms. Benjamin, is that time and date convenient?

MR. STRACCI: Your Honor, you said January the 8th?

THE COURT: January 8th.

MR. STRACCI: Your Honor, I have a murder trial scheduled in Valparaiso that may very well go beginning January the 7th.

THE COURT: You got to talk to my boss. Hold on a second.

DEPUTY CLERK: It's running slow, Judge. I need a minute.

MR. STRACCI: Your Honor, while we're waiting, I just want to make one point. You made some examples earlier -- you were giving the defendant some hypotheticals regarding factors you would have to consider, and those hypotheticals included multiple women, they included force. And just for everybody

assembled and my client, those were merely hypotheticals. There is absolutely no record --

THE COURT: I wasn't insinuating. I don't know what the facts are. I have no presentence report. I have no knowledge about this case. I was just making generalities, hypothetical.

MR. STRACCI: Thank you.

DEPUTY CLERK: How's Tuesday, January 15th, at 10:00 a.m.?

MR. STRACCI: Absolutely.

THE COURT: I was just testing you, Mr. Stracci. Disposition date for sentencing is set for Tuesday, January 15th, at 10:00 in the morning. Is that time and date convenient?

MR. STRACCI: Excellent. Thank you.

THE COURT: Ms. Benjamin?

MS. BENJAMIN: Yes, thank you.

THE COURT: And Ms. Koster?

MS. KOSTER: Yes, thank you.

THE COURT: Mr. Schaap, you understand you must be in this courtroom for sentencing, unless otherwise ordered by the Court, at 10:00 in the morning on the 15th day of January of the year 2013? Because you are in custody, the marshal service will see to it you are brought here at that time.

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Schaap, I am deferring my decision on acceptance or rejection of your plea agreement until the time set for sentencing and after opportunity for study of the presentence report. If the terms of your plea agreement are then accepted, I will so advise you. If the terms of your plea agreement are rejected, I will also advise you and then afford you an opportunity to withdraw your plea of guilty, reinstate your plea of not guilty and proceed to trial. Do you understand?

THE DEFENDANT: I understand that. Thank you.

THE COURT: Mr. Schaap, I've asked you a lot of questions today. Do you have any questions about anything I've asked you?

THE DEFENDANT: No, sir. Thank you.

THE COURT: Any questions about your case?

THE DEFENDANT: No, sir. I just want to thank my family for being here today.

THE COURT: Counsel, is there anything further that needs to be done on this case at this time?

MS. KOSTER: No, Your Honor.

MR. STRACCI: No. Thank you, Your Honor.

THE COURT: Marshals are ordered to take custody of the defendant pending sentencing.

(End of requested transcript.)

CERTIFICATE OF REPORTER

I, Kelly M. Fitzgerald, a Registered Merit Reporter and Certified Realtime Reporter, certify that the foregoing is a true, complete, and accurate transcript of the proceedings ordered to be transcribed in the above-entitled case before the Honorable Rudy Lozano, in Hammond, Indiana, on September 26, 2012.

s/Kelly M. Fitzgerald March 20, 2014

____________________________________________________________

Kelly M. Fitzgerald, Official Reporter Date

## $

**$100** [4] - 12:24, 14:13, 15:14, 26:14
**$250,000** [2] - 14:12, 26:12

## 1

**1** [4] - 3:25, 6:4, 17:22, 45:10
**10** [1] - 45:25
**10:00** [3] - 52:9, 52:13, 52:22
**13** [1] - 45:25
**14706** [1] - 5:23
**15th** [3] - 52:8, 52:13, 52:22
**16** [1] - 45:15
**16913** [1] - 25:1
**17** [2] - 42:14, 45:20
**18** [12] - 10:11, 24:25, 25:16, 29:10, 30:5, 33:19, 38:14, 38:20, 38:24, 39:22, 47:4, 47:14
**18th** [2] - 3:6, 3:9
**1957** [1] - 6:4
**1987** [1] - 17:22
**19th** [2] - 7:24, 8:25

## 2

**2** [4] - 20:5, 38:20, 47:4, 47:14
**20** [2] - 45:14, 54:10
**200** [1] - 1:15
**2004** [1] - 33:18
**2012** [15] - 1:10, 3:7, 3:10, 7:24, 8:25, 39:15, 39:17, 45:10, 45:11, 45:14, 45:19, 45:25, 46:16, 54:8
**2013** [2] - 51:10, 52:23
**2014** [1] - 54:10
**21** [1] - 46:16
**219-769-1600** [1] - 1:16
**219-852-3616** [1] - 1:20
**21st** [1] - 46:16
**2250** [1] - 25:17
**2259** [1] - 30:6
**2259(a** [1] - 29:11
**2423(a** [2] - 10:11, 38:25
**26** [2] - 1:10, 54:8
**27** [1] - 45:19
**2:00** [1] - 51:10
**2:12-CR-131** [2] - 1:4, 2:18
**2G1.3** [1] - 22:13
**2G1.3(b** [1] - 23:24
**2G1.3(b)(1)(B** [1] - 22:18
**2G1.3(b)(3** [1] - 23:4
**2G1.3(b)(4** [1] - 23:15

## 3

**3** [3] - 9:4, 20:5, 24:6
**30** [1] - 45:10
**32(c)(1)** [1] - 50:7
**3583(d** [1] - 24:25
**3771** [1] - 33:19
**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** [1] - 6:6

## 4

**4082** [1] - 1:19
**42** [1] - 25:1
**46320** [2] - 1:13, 1:20
**46410** [1] - 1:16

## 5

**5/11-1.20(a)(4)** [2] - 45:18, 45:23
**54** [1] - 6:2
**5400** [2] - 1:12, 1:19

## 7

**7** [4] - 9:5, 9:6, 9:13, 9:14
**7(a)** [1] - 10:2
**720** [2] - 45:18, 45:23
**750.520d(1)(e)** [1] - 46:3
**7th** [1] - 51:16

## 8

**8th** [3] - 51:9, 51:12, 51:13

## 9

**90th** [2] - 1:15, 5:23
**95** [1] - 14:6
**98** [1] - 14:6

## A

**a.m** [1] - 52:9
**abets** [1] - 38:21
**abetting** [2] - 38:23, 47:15
**abide** [3] - 3:23, 51:2
**able** [3] - 26:21, 28:8, 34:24
**abolished** [1] - 36:4
**above-entitled** [1] - 54:6
**absolutely** [7] - 24:3, 24:5, 43:13, 44:13, 44:17, 52:2, 52:10
**accept** [5] - 35:17, 35:22, 35:23, 48:11, 49:22
**acceptance** [7] - 20:10, 21:11, 21:15, 22:3, 31:7, 49:13, 53:2
**accepted** [6] - 8:24, 20:2, 33:9, 37:15, 49:11, 53:5
**accordance** [1] - 36:5
**accurate** [1] - 54:5
**acknowledge** [1] - 37:24
**acknowledged** [1] - 26:8
**act** [4] - 23:16, 47:6, 47:11, 47:16
**Act** [2] - 25:3, 33:18
**activity** [9] - 10:8, 38:5, 38:13, 39:20, 42:8, 42:15, 44:4, 46:6, 47:20
**add** [1] - 44:7
**addiction** [1] - 6:16
**addition** [6] - 12:22, 13:6, 13:12, 14:16, 14:20, 46:17
**additional** [1] - 16:11
**address** [3] - 5:20, 5:22, 25:9
**addresses** [1] - 25:10
**adjudged** [3] - 33:9, 36:4, 49:12
**adjudication** [1] - 33:11
**admit** [1] - 20:12
**advice** [1] - 7:2
**advise** [5] - 8:9, 49:22, 50:20, 53:5, 53:6
**advised** [2] - 2:23, 25:2
**advisory** [1] - 18:12
**affects** [1] - 22:25
**afford** [1] - 53:7
**afforded** [1] - 49:24
**afternoon** [1] - 51:10
**age** [3] - 19:17, 38:14, 39:22
**agent** [5] - 31:22, 33:1, 36:16, 36:17, 36:20
**agents** [1] - 10:25
**agree** [18] - 8:12, 11:1, 11:2, 12:1, 22:6, 23:11, 23:19, 24:1, 25:20, 29:24, 30:20, 30:24, 44:24, 44:25, 48:5, 48:11, 48:13, 48:17
**agreed** [1] - 16:22
**agreeing** [6] - 14:17, 15:13, 15:18, 30:4, 30:10, 30:13
**agreement** [37] - 3:4, 3:13, 9:3, 9:21, 9:24, 10:2, 15:22, 15:25, 16:4, 16:7, 17:1, 17:12, 22:9, 22:22, 24:18, 26:1, 27:19, 29:4, 30:2, 31:2, 31:6, 31:9, 31:12, 31:16, 31:18, 32:6, 32:12, 32:18, 35:18, 35:23, 35:24, 36:5, 49:13, 49:23, 53:2, 53:4, 53:6
**agreements** [1] - 17:3
**agrees** [2] - 10:22, 11:6
**aided** [1] - 1:22
**aiding** [2] - 38:23, 47:15
**aids** [1] - 38:21
**alcoholic** [1] - 6:19
**Alison** [2] - 1:14, 2:20
**Allan** [4] - 2:15, 5:17, 49:5, 49:6
**ALLAN** [1] - 1:5
**allow** [2] - 17:12, 18:21
**allowed** [1] - 21:24
**allows** [1] - 47:5
**alone** [3] - 45:16, 45:21, 46:1
**America** [4] - 2:15, 10:25, 12:25, 49:5
**AMERICA** [1] - 1:3
**amount** [6] - 13:23, 14:7, 15:5, 15:8, 29:19, 30:6
**amplify** [1] - 5:5
**amplifying** [2] - 5:2, 5:4
**answer** [3] - 4:11, 5:12, 28:22
**answered** [1] - 27:12
**answers** [1] - 5:13
**apologize** [2] - 36:14, 41:23
**appeal** [7] - 26:5, 26:17, 26:23, 27:6, 27:23, 35:12, 35:15
**appeals** [1] - 26:4
**appear** [1] - 7:23
**applies** [1] - 23:15
**apply** [8] - 18:3, 18:11, 22:13, 22:18, 23:5, 23:15, 34:22, 35:6
**applying** [1] - 18:3
**appreciate** [2] - 3:16, 50:9
**apprehending** [1] - 30:21
**appropriate** [1] - 50:22
**approve** [3] - 9:23, 27:18, 29:3
**approved** [1] - 8:18
**area** [2] - 40:23
**argue** [1] - 29:15
**arrangements** [1] - 50:11
**assembled** [1] - 52:1
**assessment** [5] - 12:20, 12:24, 14:14, 15:15, 26:14
**assigned** [1] - 25:22
**assist** [1] - 49:19
**assistance** [1] - 37:5
**Assistant** [1] - 2:21
**associated** [2] - 37:17, 39:1
**assume** [2] - 15:4, 16:5
**assuming** [1] - 11:12
**assurance** [1] - 31:23
**attempted** [1] - 33:2
**attempting** [2] - 20:21, 21:18
**attendance** [1] - 37:11
**attended** [2] - 43:20, 47:3
**attending** [1] - 39:22
**attention** [1] - 48:2
**attorney** [8] - 16:5,

18:22, 20:15, 22:2, 22:14, 27:22, 32:14, 34:18
**Attorney** [5] - 2:21, 7:8, 7:12, 29:12, 32:15
**Attorney's** [2] - 1:12, 16:2
**attorneys** [19] - 2:19, 4:16, 6:24, 7:3, 8:5, 8:16, 9:9, 9:17, 12:10, 16:21, 18:15, 27:10, 28:20, 29:14, 29:21, 32:11, 34:19, 34:21, 39:9
**authority** [3] - 26:9, 35:7, 46:25
**Avenue** [2] - 1:15, 5:23
**aware** [2] - 43:5, 43:6

## B

**b)** [1] - 12:4
**b)(3** [1] - 29:10
**Baptist** [2] - 47:1, 47:2
**base** [1] - 5:3
**based** [6] - 12:12, 12:13, 14:9, 14:10, 34:2, 34:3
**basis** [4] - 48:22, 49:10, 50:17, 50:20
**became** [1] - 17:21
**BEFORE** [1] - 1:9
**beginning** [2] - 4:24, 51:15
**behalf** [1] - 49:25
**behavior** [1] - 43:6
**behind** [1] - 50:8
**below** [1] - 21:4
**bench** [1] - 37:6
**benefit** [1] - 31:13
**BENJAMIN** [2] - 44:13, 52:17
**Benjamin** [9] - 1:14, 2:20, 7:3, 26:22, 44:11, 50:10, 50:14, 51:11, 52:16
**between** [19] - 10:16, 12:16, 15:19, 32:3, 32:22, 34:6, 39:13, 40:6, 41:15, 42:9, 42:17, 43:1, 43:25, 45:10, 45:24, 46:15, 46:16, 46:21, 48:9
**beverage** [1] - 6:19
**binding** [3] - 16:7, 17:5, 22:17
**birth** [1] - 6:3
**bit** [3] - 6:8, 39:25, 47:9
**boss** [1] - 51:17
**bought** [1] - 39:16
**bound** [2] - 35:19, 35:25
**breached** [1] - 31:12
**bring** [2] - 4:2, 29:21
**brought** [3] - 7:11, 39:18, 52:24
**business** [1] - 25:12
**button** [2] - 5:3
**BY** [19] - 3:21, 9:1, 9:12, 10:19, 11:20, 12:3, 15:7, 33:23, 34:17, 36:18, 39:24, 40:11, 42:1, 42:12, 42:21, 43:8, 44:2, 48:1, 48:12

## C

**c)** [1] - 15:24
**Cadillac** [1] - 41:3
**capable** [1] - 49:7
**care** [1] - 22:19
**carefully** [2] - 44:23, 45:3
**case** [46] - 2:14, 2:25, 6:23, 6:24, 7:2, 10:4, 12:6, 12:7, 14:5, 14:9, 17:16, 18:3, 18:4, 18:11, 19:3, 22:12, 23:14, 24:8, 24:15, 26:6, 26:8, 26:13, 27:5, 28:5, 29:9, 31:13, 31:25, 33:3, 33:25, 34:22, 34:25, 35:6, 35:11, 36:17, 38:3, 39:12, 41:9, 42:11, 47:17, 49:2, 49:4, 52:5, 53:15, 53:19, 54:6
**cases** [2] - 14:6, 26:5
**caused** [9] - 39:16, 39:17, 40:9, 41:9, 41:11, 41:24, 45:11, 46:6, 47:17
**causes** [2] - 47:6, 47:11
**causing** [1] - 47:16
**cellular** [2] - 46:11, 46:12
**certain** [3] - 13:9, 13:23, 15:8
**certainly** [1] - 41:13
**CERTIFICATE** [1] - 54:1
**Certified** [1] - 54:4
**certify** [1] - 54:4
**challenge** [2] - 12:11, 35:2
**challenges** [1] - 30:21
**chance** [1] - 2:15
**CHANGE** [1] - 1:8
**change** [1] - 25:13
**charge** [6] - 7:11, 16:23, 38:1, 39:5, 47:5, 49:8
**charged** [11] - 7:6, 7:8, 7:15, 7:20, 33:17, 36:25, 37:23, 38:13, 38:24, 44:4, 48:3
**charges** [6] - 6:22, 6:23, 10:6, 16:11, 38:3, 38:19
**Cherry** [3] - 7:24, 8:18, 8:24
**Chicantek** [1] - 36:17
**Church** [1] - 47:1
**circumstances** [3] - 20:5, 35:7, 35:12
**citizen** [1] - 5:24
**civil** [1] - 33:12
**claims** [4] - 11:6, 11:7, 11:9, 11:11
**CLERK** [3] - 2:1, 51:19, 52:8
**client** [2] - 2:24, 52:1
**close** [1] - 48:2
**closer** [1] - 4:3
**Code** [9] - 10:11, 24:25, 25:1, 25:16, 29:10, 30:5, 33:19, 38:20, 38:25
**code** [2] - 43:10, 43:11
**codes** [2] - 43:6, 43:12
**codified** [1] - 33:19
**coerce** [1] - 23:7
**combination** [2] - 14:12, 26:12
**commands** [1] - 38:21
**commerce** [2] - 45:13, 47:18
**Commission** [2] - 17:19, 34:22
**commission** [3] - 20:3, 23:16, 38:22
**committed** [2] - 7:17, 7:18
**committing** [1] - 16:3
**compel** [1] - 37:11
**compensable** [1] - 29:9
**competent** [1] - 49:6
**complete** [2] - 24:14, 54:5
**completed** [2] - 35:1, 50:19
**complied** [1] - 33:21
**complies** [1] - 9:11
**comply** [3] - 24:24, 25:14, 50:16
**compulsory** [1] - 37:10
**compute** [1] - 29:21
**computed** [2] - 15:5, 15:9
**computer** [14] - 1:22, 10:23, 10:24, 11:13, 11:23, 14:17, 23:5, 23:6, 30:9, 30:11, 30:15, 30:21, 30:25
**computer-aided** [1] - 1:22
**computer-related** [2] - 10:24, 30:9
**concerned** [1] - 16:8
**conclusion** [1] - 3:10
**condition** [2] - 19:17, 24:22
**conditions** [3] - 13:9, 13:10, 13:17
**conduct** [7] - 20:13, 23:8, 42:19, 43:6, 45:17, 45:22, 46:2
**connection** [1] - 11:10
**consent** [1] - 7:7
**consequences** [1] - 36:10
**consider** [2] - 19:9, 51:24
**consideration** [2] - 18:20, 19:2
**constituting** [1] - 48:3
**constitutional** [2] - 7:6, 30:20
**contact** [3] - 23:17, 43:21, 46:9
**contained** [2] - 3:13, 49:8
**containing** [2] - 48:22, 49:10
**continue** [1] - 21:15
**continuing** [2] - 20:11, 31:6
**contributions** [1] - 51:8
**control** [1] - 22:20
**convenient** [2] - 51:11, 52:14
**conviction** [1] - 26:6
**cooperation** [1] - 14:4
**copy** [4] - 6:21, 28:9, 28:10, 50:2
**correct** [12] - 10:4, 10:8, 10:12, 16:24, 16:25, 17:7, 30:19, 32:6, 40:13, 40:14, 40:17, 44:12
**Counsel** [4] - 34:12, 48:20, 51:1, 53:18
**counsel** [14] - 7:1, 10:17, 27:2, 36:15, 37:5, 39:14, 40:7, 41:16, 42:10, 42:18, 43:2, 44:1, 44:12, 48:10
**counseling** [1] - 43:23
**counsels** [1] - 38:21
**Count** [8] - 2:25, 10:3, 10:14, 38:3, 38:24, 39:11, 49:1, 49:8
**count** [6] - 12:13, 12:21, 14:10, 44:21, 45:5, 45:8
**country** [1] - 51:7
**County** [7] - 5:19, 16:16, 16:17, 16:18, 41:4, 41:25
**course** [3] - 13:19, 15:18, 29:24
**COURT** [68] - 1:1, 2:3, 2:7, 2:12, 2:14, 2:18, 3:2, 3:16, 3:21, 8:22, 9:1, 9:12, 10:19, 11:2, 11:9, 11:12, 11:17, 11:20, 12:1, 12:3, 15:4, 15:7, 33:16, 33:21, 33:23, 34:12, 34:17, 36:13, 36:18, 39:24, 40:11, 41:11, 41:19, 41:22, 42:1, 42:12, 42:21, 43:8, 44:2, 44:9, 44:11, 44:14, 44:16, 44:18, 45:3, 47:9, 48:1, 48:12, 48:20, 49:1, 49:4, 49:18, 50:5, 50:14, 51:1, 51:6, 51:13, 51:17, 52:3, 52:11, 52:16, 52:18, 52:20, 53:1, 53:11, 53:15, 53:18, 53:22
**court** [3] - 2:1, 29:22, 46:11
**Court** [25] - 1:18,

1:19, 3:6, 3:9, 8:22, 13:9, 13:10, 13:17, 17:5, 17:6, 18:19, 18:21, 22:17, 23:23, 24:22, 27:16, 28:24, 29:8, 29:16, 34:24, 37:15, 47:21, 49:4, 49:25, 52:22
**Court's** [2] - 18:23
**courthouse** [1] - 50:10
**courtroom** [1] - 52:21
**covers** [1] - 47:16
**Crete** [2] - 40:10, 40:15
**crime** [11] - 7:17, 14:21, 17:22, 20:3, 33:16, 38:4, 38:22, 38:24, 47:25, 48:3
**crimes** [4] - 20:20, 21:18, 31:11, 33:17
**criminal** [11] - 10:7, 19:11, 26:5, 38:5, 38:13, 39:2, 43:5, 43:10, 44:5, 46:5, 47:19
**Criminal** [2] - 2:18, 50:7
**cross** [1] - 37:7
**cross-examined** [1] - 37:7
**CRR** [1] - 1:18
**current** [1] - 25:4
**custody** [3] - 22:19, 52:23, 53:22

D

**Date** [1] - 54:13
**date** [7] - 3:9, 6:3, 8:1, 51:9, 51:11, 52:12, 52:13
**dates** [3] - 40:2, 46:1, 46:14
**days** [1] - 25:12
**deals** [3] - 17:3, 22:12, 47:15
**decide** [1] - 18:19
**decided** [5] - 17:17, 17:25, 18:4, 19:3, 29:20
**decision** [8] - 12:8, 18:23, 18:24, 22:4, 24:13, 29:16, 49:13, 53:1
**declare** [1] - 31:9
**decline** [1] - 37:8
**deduction** [1] - 21:10
**Defendant** [1] - 1:6
**defendant** [34] - 2:19, 2:24, 3:12, 3:19, 8:24, 9:11, 10:17, 26:5, 39:14, 40:7, 41:16, 42:10, 42:18, 43:2, 44:1, 45:6, 45:11, 45:17, 45:21, 46:2, 46:13, 46:16, 46:18, 46:19, 46:21, 46:24, 47:17, 48:10, 48:21, 49:6, 49:11, 50:5, 51:23, 53:23
**DEFENDANT** [18] - 1:14, 2:17, 10:18, 39:15, 40:8, 41:14, 42:11, 42:19, 43:3, 45:2, 48:11, 49:3, 49:17, 50:4, 52:25, 53:10, 53:14, 53:16
**defendant's** [3] - 46:5, 46:8, 46:11
**defense** [5] - 37:5, 37:8, 37:9, 37:12, 48:24
**deferring** [2] - 49:12, 53:1
**deficit** [1] - 51:7
**defined** [1] - 29:9
**degree** [1] - 6:14
**demonstrate** [2] - 21:15, 31:7
**department** [4] - 12:9, 50:9, 50:18, 50:20
**deprive** [1] - 33:12
**DEPUTY** [3] - 2:1, 51:19, 52:8
**described** [2] - 15:20, 37:18
**describing** [1] - 46:8
**determination** [1] - 31:12
**determine** [1] - 34:25
**determined** [1] - 35:6
**devices** [1] - 46:18
**different** [4] - 20:19, 20:24, 21:16, 31:23
**directly** [2] - 47:7, 47:12
**disagree** [3] - 45:1, 48:8, 48:15
**discretion** [2] - 18:7, 19:6
**discussed** [2] - 6:23, 35:14
**discussion** [11] - 2:4, 2:9, 10:16, 39:13, 40:6, 41:15, 42:9, 42:17, 43:1, 43:25, 48:9
**discussions** [2] - 32:3, 32:22
**disposition** [2] - 51:9, 52:12
**District** [16] - 16:2, 16:15, 39:17, 39:18, 40:3, 40:4, 40:12, 40:15, 40:19, 40:20, 40:24, 41:5, 41:6, 41:7, 47:22
**DISTRICT** [3] - 1:1, 1:1, 1:9
**DIVISION** [1] - 1:2
**document** [5] - 3:8, 3:11, 8:14, 9:2, 9:4
**documentation** [1] - 25:21
**documents** [5] - 3:3, 3:5, 3:14, 28:4, 28:14
**Doe** [22] - 38:9, 38:12, 38:14, 39:16, 39:18, 41:5, 42:2, 42:13, 45:12, 45:15, 45:16, 45:20, 45:21, 46:1, 46:6, 46:7, 46:9, 46:16, 46:19, 46:22, 46:25, 47:3
**Doe's** [1] - 39:21
**done** [8] - 8:20, 9:7, 9:10, 42:7, 47:7, 47:11, 50:13, 53:19
**down** [6] - 5:3, 5:4, 6:7, 26:19, 28:8, 47:9
**drug** [1] - 6:18
**drugs** [1] - 6:16
**due** [1] - 12:25
**during** [2] - 13:8, 37:4
**Dyer** [1] - 5:21

E

**e)** [1] - 26:3
**East** [1] - 1:15
**education** [2] - 6:13, 6:14
**effect** [1] - 8:14
**effective** [1] - 17:21
**effort** [1] - 31:24
**eight** [1] - 3:5
**either** [5] - 12:25, 13:24, 20:5, 34:12, 51:2
**elected** [1] - 37:9
**electronic** [1] - 46:17
**electronically** [1] - 3:6
**elements** [4] - 38:7, 47:25, 48:23, 49:10
**employee** [1] - 25:11
**employees** [1] - 10:25
**employment** [2] - 25:6, 25:13
**End** [1] - 53:24
**end** [1] - 27:22
**engage** [9] - 10:7, 23:7, 38:5, 38:12, 39:19, 42:15, 44:3, 46:5, 47:19
**engaged** [4] - 42:19, 45:17, 45:22, 46:2
**engaging** [1] - 42:8
**enhancement** [4] - 22:18, 22:25, 23:4, 23:15
**enter** [2] - 2:24, 31:24
**entering** [4] - 37:14, 38:2, 39:6, 49:7
**entice** [1] - 23:6
**entitled** [3] - 3:3, 9:2, 54:6
**entry** [1] - 30:4
**equipment** [2] - 10:24, 30:9
**essential** [3] - 38:7, 48:23, 49:10
**establish** [1] - 46:23
**event** [1] - 21:4
**events** [2] - 16:11, 24:15
**evidence** [6] - 37:6, 45:15, 45:20, 46:17, 47:17, 47:24
**evidencing** [1] - 46:20
**EXAMINATION** [1] - 3:20
**examined** [1] - 37:7
**examples** [1] - 51:22
**excellent** [1] - 52:15
**except** [1] - 27:2
**exception** [1] - 14:5
**exceptions** [1] - 14:3
**exchange** [1] - 16:9
**exchanged** [1] - 46:15
**excuse** [4] - 34:19, 40:5, 42:25, 46:10
**execute** [1] - 8:14
**executed** [1] - 8:16
**expect** [2] - 50:16, 50:17
**expected** [1] - 35:19
**explain** [3] - 8:2, 17:16, 18:1
**explained** [1] - 7:21
**explanation** [1] - 34:13
**extent** [1] - 6:13

F

**f)** [1] - 28:2
**face** [1] - 3:17
**facilitate** [1] - 23:7
**facing** [3] - 12:6, 21:3, 33:25
**fact** [5] - 7:23, 42:15, 48:22, 49:10, 50:2
**factor** [5] - 14:4, 19:19, 20:1, 20:4
**factors** [7] - 18:20, 18:21, 18:24, 19:2, 19:9, 20:23, 51:23
**facts** [7] - 24:8, 35:2, 44:20, 45:4, 48:3, 48:6, 52:4
**failure** [3] - 25:14, 25:15, 51:2
**fair** [5] - 18:5, 18:7, 19:4, 19:6, 24:7
**false** [1] - 5:14
**falsely** [1] - 5:12
**family** [1] - 53:17
**fancy** [1] - 12:21
**far** [1] - 15:4
**fast** [1] - 6:10
**faster** [1] - 6:10
**favor** [1] - 20:7
**FBI** [1] - 36:17
**featuring** [1] - 46:19
**Federal** [3] - 1:12, 1:19, 50:7
**federal** [3] - 10:10, 25:3, 25:16
**felony** [3] - 7:11, 7:15, 33:6
**few** [1] - 14:4
**filed** [1] - 3:6
**filing** [1] - 7:12
**final** [7] - 18:24, 22:4, 22:7, 23:25, 24:4, 24:12, 29:16
**finally** [4] - 23:13, 25:14, 31:4, 36:3
**fine** [5] - 12:21, 14:12, 15:12, 25:17, 26:11
**finishes** [1] - 44:23
**firearm** [1] - 33:14
**first** [3] - 21:9, 38:9, 45:14
**Fitzgerald** [4] - 1:18, 54:3, 54:10, 54:13

**five** [1] - 15:12
**follow** [6] - 17:9, 17:10, 17:11, 18:2, 18:12
**following** [2] - 13:16, 25:5
**FOR** [2] - 1:11, 1:14
**force** [3] - 19:19, 33:2, 51:25
**foregoing** [1] - 54:4
**forfeit** [2] - 10:23, 30:10
**forfeited** [1] - 11:7
**forfeiture** [4] - 14:17, 15:13, 15:17, 26:13
**forums** [1] - 4:1
**four** [1] - 20:20
**fourth** [1] - 24:20
**frame** [2] - 46:9, 46:24
**front** [2] - 5:2, 7:21
**full** [2] - 5:16, 29:8
**fully** [5] - 6:23, 7:1, 9:19, 43:4, 49:6

## G

**g)** [1] - 29:6
**general** [2] - 6:24, 24:15
**generalities** [1] - 52:5
**generally** [1] - 14:2
**gentleman** [1] - 50:8
**given** [6] - 7:2, 24:8, 26:23, 29:20, 37:16, 50:3
**GOVERNMENT** [1] - 1:11
**government** [46] - 2:6, 2:20, 11:22, 12:10, 15:4, 15:8, 15:25, 16:1, 17:4, 18:22, 21:9, 21:14, 22:2, 22:12, 23:22, 24:7, 24:21, 27:5, 28:13, 29:15, 29:19, 30:13, 30:25, 31:9, 31:14, 31:19, 31:22, 32:3, 32:22, 33:1, 35:2, 35:12, 36:20, 38:8, 38:25, 44:20, 45:5, 45:9, 46:4, 46:10, 46:23, 47:5, 47:24
**government's** [2] - 48:3, 48:5
**grand** [3] - 7:6, 7:15, 8:11
**grunt** [1] - 4:13
**Guideline** [2] - 22:18, 23:4
**guideline** [10] - 18:4, 18:5, 18:6, 18:8, 19:3, 19:4, 19:5, 20:7, 22:13, 34:25
**Guidelines** [1] - 17:18
**guidelines** [15] - 17:21, 18:1, 18:2, 18:12, 18:16, 18:18, 20:24, 20:25, 21:4, 21:6, 22:12, 22:25, 34:22, 35:6, 35:9
**guilt** [1] - 37:24
**guilty** [50] - 2:24, 3:12, 10:3, 10:14, 10:18, 10:20, 12:13, 12:14, 12:22, 14:10, 14:11, 16:9, 16:10, 16:23, 17:13, 17:23, 20:3, 20:21, 21:19, 21:24, 31:24, 32:2, 32:21, 33:2, 33:6, 33:8, 33:9, 34:3, 34:4, 35:18, 35:23, 36:4, 36:25, 37:14, 37:20, 37:23, 38:2, 38:22, 38:23, 39:6, 39:11, 44:22, 45:7, 49:2, 49:3, 49:8, 49:12, 53:7, 53:8

## H

**h)** [1] - 30:8
**HAMMOND** [1] - 1:2
**Hammond** [9] - 1:13, 1:20, 2:18, 40:9, 40:12, 40:22, 47:1, 47:2, 54:7
**hand** [1] - 3:17
**happy** [1] - 51:7
**harmless** [7] - 11:3, 11:6, 11:9, 11:14, 11:16, 11:22, 30:13
**head** [1] - 4:12
**hear** [9] - 3:25, 4:4, 4:6, 12:20, 13:3, 13:21, 37:7
**heard** [1] - 13:4
**HEARING** [1] - 1:8
**hearing** [5] - 3:24, 4:25, 49:22, 49:25, 50:2
**held** [2] - 10:25, 46:24
**helicopter** [1] - 6:11
**help** [1] - 30:25
**higher** [2] - 18:8, 19:7
**hmm** [1] - 4:12
**hold** [10] - 5:3, 11:1, 11:3, 11:6, 11:13, 11:16, 11:22, 30:13, 33:13, 51:17
**home** [2] - 5:20, 40:23
**Honor** [38] - 2:5, 2:10, 3:1, 3:15, 5:15, 6:25, 9:15, 11:5, 11:11, 11:15, 12:2, 15:6, 33:20, 33:22, 34:15, 34:16, 36:16, 39:15, 40:9, 41:9, 41:17, 43:3, 44:15, 45:8, 47:4, 47:14, 47:23, 48:25, 50:13, 50:24, 50:25, 51:4, 51:5, 51:12, 51:14, 51:21, 53:20, 53:21
**HONORABLE** [1] - 1:9
**Honorable** [2] - 2:2, 54:7
**hot** [1] - 5:2
**hypothetical** [1] - 52:6
**hypotheticals** [3] - 51:23, 51:24, 52:1

## I

**idea** [1] - 12:6
**identical** [1] - 3:4
**identified** [1] - 46:12
**ILCS** [2] - 45:18, 45:23
**Illinois** [20] - 16:15, 16:19, 38:10, 39:17, 40:10, 40:15, 40:16, 41:6, 42:2, 42:7, 42:16, 43:16, 45:16, 45:17, 45:21, 45:22, 46:13, 46:20, 47:20, 47:22
**illness** [1] - 6:16
**importance** [1] - 13:16
**important** [2] - 20:1, 20:4
**impose** [2] - 35:7, 35:13
**imprisonment** [4] - 13:7, 13:24, 25:18, 26:11
**IN** [1] - 1:1
**include** [1] - 19:9
**included** [3] - 46:18, 51:24, 51:25
**includes** [3] - 16:14, 25:9, 27:1
**including** [4] - 20:12, 31:21, 32:25, 36:19
**incompetence** [1] - 27:1
**increasing** [1] - 23:1
**incriminate** [1] - 37:21
**incurred** [1] - 15:1
**indeed** [1] - 10:18
**independent** [2] - 48:22, 49:9
**INDIANA** [1] - 1:1
**Indiana** [23] - 1:13, 1:16, 1:20, 5:21, 16:2, 38:10, 38:11, 39:17, 39:18, 39:19, 40:3, 40:4, 40:10, 40:12, 40:13, 40:19, 40:20, 40:25, 41:6, 41:25, 43:14, 47:22, 54:7
**indicate** [1] - 10:3
**indicating** [1] - 4:17
**indictment** [8] - 7:6, 7:10, 7:14, 7:16, 7:20, 8:11, 8:12, 8:23
**individual** [1] - 18:19
**individuals** [1] - 18:22
**induce** [2] - 23:6, 31:24
**induces** [1] - 38:21
**influence** [1] - 6:18
**inform** [1] - 38:1
**information** [24] - 2:25, 6:21, 7:8, 7:12, 10:4, 10:15, 12:14, 14:10, 16:10, 24:15, 25:9, 34:3, 38:3, 38:19, 39:11, 44:21, 45:6, 45:9, 45:12, 49:2, 49:8, 49:20, 50:11, 50:18
**informed** [1] - 49:7
**input** [1] - 18:21
**insinuating** [1] - 52:3
**insofar** [1] - 16:7
**inspection** [1] - 3:3
**instead** [1] - 7:10
**intending** [1] - 44:22
**intends** [1] - 45:6
**intent** [7] - 10:7, 38:4, 38:12, 39:19, 44:3, 46:5, 47:19
**intents** [1] - 3:4
**interactive** [1] - 23:6
**interest** [4] - 10:23, 11:13, 11:23, 11:24
**interrupted** [1] - 41:22
**interstate** [2] - 45:12, 47:18
**introduce** [1] - 36:14
**investigation** [7] - 12:9, 24:14, 28:5, 50:6, 50:12, 50:19, 50:21
**involved** [6] - 19:13, 19:19, 20:20, 21:17, 23:5, 23:16
**involvement** [1] - 20:12
**involves** [1] - 30:17
**issuance** [1] - 37:10
**issue** [1] - 51:3
**issuing** [1] - 50:15
**items** [1] - 11:7

## J

**Jack** [4] - 2:15, 5:17, 49:5, 49:6
**JACK** [1] - 1:5
**jail** [2] - 13:11, 15:12
**Jail** [1] - 5:19
**Jane** [23] - 38:9, 38:12, 38:14, 39:16, 39:18, 39:21, 41:5, 42:2, 42:13, 45:12, 45:15, 45:16, 45:20, 45:21, 46:1, 46:6, 46:7, 46:9, 46:16, 46:19, 46:22, 46:25, 47:3
**January** [7] - 51:9, 51:12, 51:13, 51:16, 52:8, 52:12, 52:22
**Jill** [2] - 1:11, 2:22
**Judge** [2] - 47:10, 51:19
**JUDGE** [1] - 1:9
**judge** [4] - 7:21, 7:23, 26:22, 35:6
**July** [5] - 39:17, 45:10, 45:25, 46:16
**June** [5] - 39:15, 45:10, 45:14, 45:19, 46:16
**jurisdiction** [2] - 26:9, 26:18
**jurisdictions** [4] - 16:4, 16:8, 16:22, 25:5
**jury** [6] - 7:7, 7:15, 8:11, 33:14, 37:4,

37:6
**Justice** [1] - 33:18

## K

**keep** [1] - 25:4
**Kelly** [2] - 54:3, 54:13
**kelly** [1] - 1:18
**kind** [5] - 6:16, 6:19, 12:21, 31:23, 33:14
**knowing** [2] - 48:21, 49:9
**knowingly** [7] - 8:20, 8:23, 27:14, 28:18, 29:1, 39:1, 41:8
**knowledge** [1] - 52:5
**Koster** [16] - 1:11, 2:22, 11:2, 11:3, 12:1, 33:16, 36:13, 44:19, 44:23, 45:4, 47:9, 48:18, 50:15, 51:6, 52:18
**KOSTER** [17] - 11:5, 11:11, 11:15, 11:19, 12:2, 15:6, 33:20, 33:22, 34:16, 36:16, 45:8, 47:10, 48:25, 50:24, 51:5, 52:19, 53:20

## L

**ladies** [3] - 19:13, 19:14, 19:16
**lady** [1] - 3:17
**Lake** [1] - 16:16
**large** [1] - 46:15
**last** [1] - 3:7
**lastly** [1] - 4:16
**law** [13] - 13:22, 14:2, 25:3, 25:16, 39:20, 42:22, 43:5, 43:9, 45:17, 45:22, 46:2, 47:5, 47:6
**lawyer** [11] - 31:21, 32:3, 32:22, 32:23, 32:25, 36:19, 36:20, 49:21, 49:23
**lawyers** [3] - 32:4, 49:24, 50:1
**lead** [1] - 44:12
**leader** [2] - 43:4
**least** [7] - 12:15, 13:23, 14:6, 14:7, 15:11, 34:5, 48:17
**leave** [1] - 50:10
**length** [1] - 3:5
**less** [1] - 35:8
**level** [3] - 22:17, 23:4, 23:15
**life** [6] - 13:9, 14:12, 14:13, 26:11, 26:12, 47:3
**limited** [1] - 19:10
**listen** [4] - 32:20, 44:22, 45:3, 48:2
**live** [2] - 5:18, 13:8
**location** [3] - 25:5, 25:6, 25:7
**look** [1] - 44:18
**looking** [1] - 8:1
**lose** [1] - 31:13
**loss** [1] - 15:1
**losses** [1] - 29:9
**loud** [1] - 4:11
**lower** [3] - 18:8, 19:7, 20:6
**LOZANO** [1] - 1:9
**Lozano** [2] - 2:2, 54:7
**lying** [1] - 21:16

## M

**magistrate** [2] - 7:21, 7:23
**Magistrate** [2] - 8:18, 8:24
**man** [1] - 36:14
**mandatory** [5] - 13:22, 15:14, 21:4, 21:5, 24:22
**March** [1] - 54:10
**marshal** [1] - 52:23
**marshals** [1] - 53:22
**Master's** [1] - 6:14
**Matt** [1] - 36:16
**maximum** [4] - 15:20, 21:10, 26:9, 34:13
**MCLS** [1] - 46:3
**mean** [2] - 4:19, 34:19
**means** [4] - 4:17, 13:23, 17:6, 22:25
**medication** [1] - 6:19
**mental** [1] - 6:15
**merely** [1] - 52:1
**Merit** [1] - 54:3
**Merrillville** [1] - 1:16
**messages** [2] - 46:15, 46:21
**Michigan** [23] - 16:16, 16:17, 38:11, 39:19, 39:20, 40:19, 41:2, 41:3, 41:7, 42:2, 42:7, 42:11, 42:16, 43:14, 45:24, 46:1, 46:2, 46:14, 46:20, 47:20, 47:22
**microphone** [2] - 4:3, 5:1
**might** [1] - 25:7
**minimum** [5] - 13:22, 15:19, 21:4, 21:5, 34:13
**minor** [3] - 22:19, 23:7, 38:4
**minus** [2] - 20:5
**minute** [1] - 51:20
**moment** [4] - 2:6, 39:8, 40:5, 42:25
**months** [1] - 20:24
**morning** [2] - 52:13, 52:22
**most** [3] - 12:14, 14:11, 34:4
**MR** [26] - 2:5, 2:8, 2:10, 2:13, 3:1, 3:15, 34:15, 41:9, 41:13, 41:17, 41:21, 41:23, 44:10, 44:15, 44:17, 48:24, 50:13, 50:25, 51:4, 51:12, 51:14, 51:21, 52:7, 52:10, 52:15, 53:21
**MS** [19] - 11:5, 11:11, 11:15, 11:19, 12:2, 15:6, 33:20, 33:22, 34:16, 36:16, 44:13, 45:8, 47:10, 48:25, 50:24, 51:5, 52:17, 52:19, 53:20
**multiple** [1] - 51:25
**murder** [1] - 51:14
**must** [4] - 13:8, 25:3, 25:11, 52:20

## N

**name** [3] - 5:16, 25:9, 25:13
**namely** [1] - 10:10
**names** [1] - 25:10
**narcotic** [1] - 6:16
**nature** [1] - 46:8
**near** [1] - 41:3
**necessary** [2] - 30:24, 50:11
**need** [3] - 34:8, 34:12, 51:19
**needs** [1] - 53:19
**negotiation** [1] - 27:3
**never** [1] - 36:5
**next** [1] - 13:21
**nonbinding** [9] - 17:15, 21:8, 21:9, 22:11, 23:3, 23:13, 23:21, 24:20, 31:13
**NORTHERN** [1] - 1:1
**Northern** [14] - 16:2, 16:15, 39:16, 39:18, 40:3, 40:12, 40:15, 40:18, 40:19, 40:24, 41:5, 41:6, 47:21
**note** [2] - 47:4, 47:15
**noted** [1] - 47:21
**nothing** [1] - 44:10
**Notification** [1] - 25:3
**notified** [1] - 33:17
**November** [1] - 17:22
**null** [1] - 31:10
**number** [3] - 6:5, 20:6, 46:15
**numerous** [1] - 18:20

## O

**oath** [1] - 5:12
**objections** [2] - 50:21, 50:22
**obligation** [1] - 31:6
**obligations** [1] - 25:15
**obtained** [1] - 46:11
**obviously** [2] - 12:16, 15:17
**occasion** [1] - 9:16
**occasions** [5] - 39:16, 42:7, 45:10, 48:17, 48:19
**occur** [1] - 47:16
**occurred** [7] - 17:23, 20:19, 21:17, 40:2, 42:13, 45:14, 45:19
**occurrence** [1] - 46:4
**October** [1] - 6:4
**OF** [5] - 1:1, 1:3, 1:8, 54:1
**offender** [4] - 24:23, 24:24, 25:23, 25:24
**Offender** [1] - 25:2
**offense** [16] - 19:23, 20:12, 23:5, 23:16, 33:5, 33:6, 33:9, 36:25, 38:8, 38:13, 44:5, 47:8, 47:12, 48:23, 49:11, 49:12
**office** [3] - 33:13, 49:19, 50:6
**Office** [5] - 1:12, 16:2, 16:16, 16:17, 16:18
**officer** [2] - 25:22, 35:3
**Official** [2] - 1:19, 54:13
**often** [1] - 25:22
**old** [6] - 6:1, 6:2, 42:13, 42:14, 45:15, 45:20
**once** [3] - 19:2, 45:16, 45:21
**one** [12] - 2:5, 3:5, 3:8, 12:19, 14:4, 19:10, 20:11, 21:3, 22:17, 31:9, 44:16, 51:22
**One** [8] - 2:25, 10:3, 10:14, 38:3, 38:24, 39:11, 49:2, 49:8
**ones** [1] - 16:3
**operate** [2] - 18:16, 20:25
**opportunity** [8] - 12:11, 29:15, 29:20, 35:2, 49:14, 49:24, 53:3, 53:7
**order** [8] - 24:22, 29:8, 37:23, 38:23, 46:12, 50:15, 50:16, 51:2
**ordered** [3] - 52:21, 53:22, 54:6
**otherwise** [1] - 52:21
**owe** [1] - 29:15
**own** [6] - 31:21, 32:25, 36:19, 37:8, 37:9, 39:10

## P

**page** [2] - 3:7, 9:4
**pages** [1] - 3:5
**paragraph** [7] - 9:5, 9:6, 9:13, 9:14, 10:2, 26:16, 27:22
**paragraphs** [1] - 27:21
**pardon** [1] - 38:17
**parole** [3] - 36:3, 36:6
**part** [8] - 9:23, 17:16, 17:25, 27:18, 29:3, 37:8, 48:8, 48:15
**participated** [1] - 39:2
**parties** [3] - 2:10, 29:12, 30:18

**pastor** [4] - 39:21, 43:19, 43:22, 47:1
**paul** [1] - 1:14
**Paul** [4] - 2:20, 7:24, 8:18, 8:24
**pay** [6] - 12:24, 14:20, 15:14, 29:8, 30:6, 48:2
**payable** [2] - 12:24, 12:25
**paying** [1] - 15:1
**penalties** [5] - 12:5, 12:23, 21:2, 33:25, 34:14
**pending** [2] - 6:22, 53:23
**people** [1] - 11:7
**percent** [1] - 14:6
**performed** [2] - 47:7, 47:12
**period** [1] - 13:8
**perjury** [1] - 5:14
**permit** [1] - 50:1
**persist** [1] - 36:25
**person** [2] - 2:19, 38:21
**persuade** [1] - 23:6
**photographs** [1] - 46:19
**place** [1] - 45:24
**places** [1] - 25:10
**played** [1] - 19:23
**Plaza** [2] - 1:12, 1:19
**plea** [47] - 2:24, 3:3, 3:12, 3:13, 8:10, 9:3, 9:23, 10:1, 16:9, 17:11, 17:12, 20:21, 21:18, 21:24, 27:18, 29:3, 31:5, 31:18, 31:24, 32:6, 33:8, 35:17, 35:18, 35:19, 35:22, 35:23, 35:24, 35:25, 36:5, 36:10, 37:1, 37:14, 37:15, 38:2, 39:6, 48:22, 49:7, 49:9, 49:11, 49:13, 49:23, 53:2, 53:4, 53:6, 53:7, 53:8
**PLEA** [1] - 1:8
**plead** [11] - 10:3, 10:14, 10:20, 32:2, 32:21, 33:2, 36:24, 37:20, 44:22, 45:6, 49:1
**pleading** [9] - 12:13, 12:14, 14:9, 14:11, 17:22, 20:3, 33:6, 34:3, 34:4
**plural** [1] - 34:20
**point** [1] - 51:22
**points** [3] - 20:6, 21:11
**Porter** [1] - 5:19
**portion** [1] - 47:14
**position** [2] - 46:24, 47:1
**possess** [1] - 33:14
**possible** [1] - 36:9
**practical** [2] - 26:19, 35:14
**precise** [1] - 36:22
**prediction** [1] - 36:21
**preparation** [1] - 50:12
**prepared** [5] - 2:11, 12:9, 44:20, 45:5, 49:19
**present** [7] - 2:19, 8:5, 37:6, 46:10, 46:17, 47:24, 49:21
**presentence** [13] - 12:8, 24:14, 35:1, 49:14, 49:18, 50:1, 50:6, 50:12, 50:15, 50:18, 50:21, 52:4, 53:4
**presenting** [1] - 46:7
**presently** [1] - 6:18
**presiding** [1] - 2:2
**press** [1] - 16:10
**prevent** [1] - 46:10
**principal** [1] - 47:13
**printed** [1] - 3:8
**prison** [1] - 14:12
**private** [1] - 43:20
**probable** [1] - 7:16
**probation** [8] - 12:9, 25:22, 35:3, 49:19, 50:6, 50:9, 50:18, 50:20
**problem** [1] - 4:1
**Procedure** [1] - 50:7
**procedures** [2] - 50:16, 50:23
**proceed** [3] - 2:11, 5:7, 53:8
**proceedings** [1] - 54:5
**Proceedings** [1] - 1:21
**process** [1] - 37:11
**procures** [1] - 38:22
**produced** [1] - 1:21
**prohibited** [2] - 23:8
**promise** [2] - 31:23, 36:21
**promises** [1] - 31:14
**promulgated** [1] - 17:18
**prophecy** [1] - 36:21
**prosecute** [2] - 16:23, 31:11
**prosecution** [3] - 5:13, 25:15, 28:5
**Prosecutor's** [3] - 16:16, 16:17
**prove** [6] - 38:9, 39:1, 44:21, 45:5, 45:9, 46:4
**proved** [1] - 29:11
**provide** [3] - 25:9, 25:21, 50:17
**provided** [1] - 26:10
**public** [3] - 4:1, 33:13, 44:15
**punishable** [2] - 25:17, 47:13
**purpose** [2] - 42:6, 42:8
**purposes** [4] - 3:4, 26:19, 35:14, 47:25
**pursuant** [5] - 3:13, 24:25, 30:5, 33:18, 50:7
**push** [1] - 5:3

## Q

**questions** [15] - 4:11, 5:9, 5:12, 9:8, 20:17, 20:25, 27:12, 27:16, 28:22, 28:24, 34:10, 37:22, 53:12, 53:15
**quietly** [1] - 9:8

## R

**raise** [2] - 3:17, 4:7
**range** [8] - 18:4, 18:5, 18:6, 18:8, 19:3, 19:4, 19:5, 20:7
**read** [7] - 9:5, 9:7, 9:13, 9:16, 47:14, 50:1, 50:16
**reading** [1] - 9:9
**ready** [1] - 5:7
**realize** [1] - 9:6
**Realtime** [1] - 54:4
**reason** [2] - 10:20, 17:21
**reasonable** [4] - 18:5, 18:7, 19:4, 19:6
**reasonably** [1] - 30:24
**reasons** [1] - 21:23
**receive** [3] - 12:23, 28:3, 28:14
**received** [4] - 3:2, 3:9, 6:21, 46:13
**recommend** [3] - 4:23, 22:3, 24:22
**recommendation** [10] - 21:9, 21:14, 21:19, 21:22, 21:23, 22:11, 23:3, 23:13, 23:22, 24:21
**recommendations** [9] - 17:5, 17:8, 17:15, 21:8, 22:16, 23:24, 24:1, 35:24
**record** [13] - 2:4, 2:9, 10:16, 19:11, 39:13, 40:6, 41:15, 42:9, 42:17, 43:1, 43:25, 48:9, 52:2
**recording** [1] - 28:9
**records** [3] - 28:4, 28:14, 46:11
**refer** [1] - 50:5
**referred** [1] - 45:11
**regarding** [4] - 24:15, 28:4, 50:15, 51:23
**regards** [6] - 8:2, 18:20, 23:24, 27:23, 30:14, 34:10
**register** [3] - 24:23, 25:4, 25:16
**Registered** [1] - 54:3
**Registration** [1] - 25:3
**registration** [6] - 24:24, 25:4, 25:8, 25:12, 25:23, 25:24
**regularly** [1] - 47:3
**reinstate** [1] - 53:8
**reject** [2] - 17:11, 49:23
**rejected** [1] - 53:6
**rejection** [2] - 49:13, 53:2
**related** [3] - 10:24, 30:9, 33:17
**relates** [1] - 27:2
**relationship** [2] - 46:8, 46:21
**release** [12] - 13:4, 13:6, 13:8, 13:11, 13:13, 13:16, 13:24, 14:13, 15:12, 24:23, 25:21, 26:13
**released** [1] - 36:6
**relevant** [3] - 20:13, 46:9, 46:24
**remain** [1] - 25:20
**remaining** [1] - 13:12
**remains** [1] - 25:24
**remember** [2] - 26:10, 41:19
**repeat** [2] - 34:8, 41:17
**repetition** [1] - 34:13
**rephrase** [1] - 4:9
**report** [15] - 12:9, 12:11, 24:14, 35:1, 49:15, 49:18, 49:21, 50:2, 50:3, 50:6, 50:12, 50:19, 50:22, 52:4, 53:4
**reported** [2] - 1:21, 35:3
**REPORTER** [1] - 54:1
**Reporter** [5] - 1:18, 1:19, 54:3, 54:4, 54:13
**reports** [2] - 28:4, 28:14
**representation** [1] - 7:1
**represented** [1] - 2:21
**requested** [2] - 25:22, 53:24
**require** [4] - 11:17, 11:18, 25:8, 30:17
**required** [2] - 14:20, 49:20
**requirements** [1] - 24:24
**requiring** [1] - 30:6
**residence** [3] - 25:5, 25:9, 25:13
**responsibility** [7] - 20:2, 20:11, 21:11, 21:16, 22:3, 31:7, 43:3
**responsible** [1] - 43:4
**restitution** [10] - 14:21, 14:24, 15:5, 15:14, 26:13, 29:7, 29:8, 29:16, 29:20, 30:5
**result** [6] - 16:11, 32:2, 32:21, 43:21, 46:25, 51:2
**return** [1] - 7:16
**revoke** [1] - 13:10
**rights** [9] - 8:2, 26:17, 26:18, 28:14, 30:10, 33:12, 33:18, 35:15, 37:17
**rise** [1] - 2:1
**RMR** [1] - 1:18
**road** [2] - 26:20, 28:8
**Rochelle** [1] - 1:11

**role** [1] - 19:23
**Rudy** [2] - 2:2, 54:7
**RUDY** [1] - 1:9
**rule** [2] - 3:25, 14:3
**Rules** [1] - 50:7
**rules** [2] - 3:22, 3:23
**rulings** [1] - 26:21
**running** [1] - 51:19

## S

**s/Kelly** [1] - 54:10
**sanctions** [1] - 51:3
**satisfied** [3] - 7:1, 48:21, 48:24
**satisfies** [1] - 47:25
**satisfy** [1] - 37:23
**Schaap** [46] - 2:16, 2:17, 3:16, 3:22, 5:11, 5:17, 5:18, 6:7, 6:15, 6:21, 7:5, 9:2, 9:13, 10:2, 10:14, 10:22, 11:21, 12:4, 12:6, 16:1, 17:3, 18:2, 21:2, 26:4, 26:16, 27:21, 31:5, 31:18, 32:6, 33:24, 34:18, 36:9, 36:19, 38:1, 38:19, 39:5, 39:8, 44:18, 48:2, 49:1, 49:5, 49:6, 49:18, 52:20, 53:1, 53:11
**SCHAAP** [1] - 1:5
**scheduled** [1] - 51:15
**school** [3] - 25:7, 39:21, 43:20
**School** [1] - 47:2
**schools** [1] - 43:22
**seated** [1] - 2:3
**second** [8] - 13:3, 22:11, 23:3, 38:11, 39:10, 45:19, 47:16, 51:18
**Section** [13] - 10:11, 22:18, 23:4, 24:25, 25:1, 25:17, 29:10, 30:5, 33:19, 38:20, 38:25, 47:4, 47:14
**section** [2] - 22:14, 47:16
**sections** [1] - 43:5
**Security** [1] - 6:5
**see** [4] - 16:14, 34:12, 37:6, 52:24
**seized** [2] - 10:24, 46:18
**seizure** [1] - 11:10
**send** [1] - 13:11
**sent** [1] - 46:13
**sentence** [17] - 12:7, 12:16, 15:19, 17:16, 17:25, 18:19, 24:8, 26:6, 26:9, 26:20, 34:5, 34:25, 35:7, 35:8, 35:13, 35:18, 36:22
**sentenced** [3] - 18:6, 19:5, 36:4
**sentencing** [12] - 13:1, 29:19, 35:24, 49:20, 49:22, 49:25, 50:2, 51:9, 52:12, 52:21, 53:3, 53:23
**Sentencing** [3] - 17:17, 17:18, 34:22
**separate** [2] - 42:7, 45:10
**September** [5] - 3:7, 3:10, 7:24, 8:25, 54:7
**SEPTEMBER** [1] - 1:10
**serve** [3] - 13:23, 14:6, 33:13
**served** [1] - 13:12
**service** [2] - 23:6, 52:24
**session** [1] - 2:1
**set** [5] - 13:9, 13:17, 51:9, 52:12, 53:3
**severe** [3] - 35:8, 35:18
**sex** [5] - 23:16, 24:23, 24:24, 25:23
**Sex** [1] - 25:2
**sexual** [12] - 10:7, 23:8, 23:16, 38:5, 38:12, 39:19, 42:8, 42:15, 42:19, 44:4, 46:5, 47:20
**shall** [3] - 49:23, 49:24, 50:1
**shortchange** [1] - 44:11
**show** [4] - 20:10, 45:15, 45:20, 47:17
**signatures** [2] - 3:8, 3:11
**simple** [1] - 20:11
**sin** [1] - 43:7
**singular** [1] - 34:19
**slow** [3] - 6:7, 47:9, 51:19
**smaller** [1] - 20:6
**smarter** [1] - 44:16
**smiling** [1] - 51:6
**Social** [1] - 6:5
**someone** [1] - 47:5
**somewhere** [3] - 12:16, 15:19, 34:6
**soon** [1] - 5:4
**sorry** [4] - 25:23, 41:11, 41:21, 47:10
**speaking** [1] - 4:1
**special** [6] - 12:20, 12:24, 14:13, 15:15, 26:14, 36:16
**specifically** [3] - 45:18, 45:22, 46:3
**spiritual** [1] - 43:18
**sports** [1] - 4:17
**stand** [1] - 3:17
**standing** [1] - 25:24
**start** [6] - 6:10, 10:2, 21:16, 21:17, 21:18
**starts** [1] - 5:5
**State** [4] - 38:10, 38:11
**state** [2] - 5:16, 24:24
**STATE** [1] - 1:9
**statement** [2] - 5:14, 28:10
**states** [1] - 47:6
**States** [23] - 2:14, 2:21, 5:24, 7:8, 7:12, 10:11, 10:24, 12:25, 16:2, 17:17, 17:18, 24:25, 25:1, 25:16, 29:10, 29:11, 30:5, 33:19, 38:20, 38:25, 47:8, 47:13, 49:5
**STATES** [2] - 1:1, 1:3
**status** [1] - 25:13
**statute** [7] - 10:10, 12:12, 14:9, 21:5, 26:10, 33:21, 34:2
**statutes** [2] - 27:21, 27:23
**statutory** [1] - 30:20
**stenotype** [1] - 1:21
**steps** [1] - 30:24
**still** [3] - 15:13, 35:19, 35:25
**stipulated** [1] - 29:12
**stop** [2] - 3:24, 5:4
**stories** [1] - 21:17
**story** [1] - 20:19
**Stracci** [17] - 1:14, 1:15, 2:20, 2:23, 3:2, 3:12, 7:2, 26:22, 28:9, 41:12, 41:20, 44:9, 44:12, 50:8, 50:14, 51:10, 52:11
**STRACCI** [26] - 2:5, 2:8, 2:10, 2:13, 3:1, 3:15, 34:15, 41:9, 41:13, 41:17, 41:21, 41:23, 44:10, 44:15, 44:17, 48:24, 50:13, 50:25, 51:4, 51:12, 51:14, 51:21, 52:7, 52:10, 52:15, 53:21
**strike** [1] - 19:22
**strongly** [1] - 4:22
**student** [3] - 25:6, 25:11, 25:13
**study** [2] - 49:14, 53:3
**subject** [2] - 4:22, 25:15
**subparagraph** [10] - 12:4, 12:5, 15:24, 17:3, 26:3, 28:2, 29:6, 30:8, 31:4
**subparagraphs** [2] - 9:6, 9:14
**subpoenas** [1] - 37:10
**subsection** [1] - 24:6
**subsections** [1] - 29:9
**succeed** [1] - 39:3
**Suite** [1] - 1:19
**summary** [5] - 44:20, 45:4, 47:23, 48:3, 48:5
**superintendent** [4] - 39:21, 43:19, 43:22, 47:2
**supervised** [12] - 13:4, 13:6, 13:8, 13:11, 13:13, 13:16, 13:24, 14:13, 15:12, 24:23, 25:21, 26:13
**supervision** [1] - 46:25
**supervisory** [1] - 22:19
**supported** [2] - 48:22, 49:9
**sworn** [2] - 3:18, 3:19

## T

**table** [1] - 36:15
**talks** [2] - 12:5, 31:4
**tape** [1] - 28:9
**telephone** [1] - 46:11
**ten** [2] - 15:11, 24:9
**term** [10] - 12:20, 13:3, 13:6, 13:7, 13:13, 13:15, 13:21, 13:22
**terms** [8] - 10:1, 12:19, 31:5, 31:12, 31:18, 53:4, 53:5
**testify** [2] - 37:8, 37:11
**testimony** [1] - 46:7
**testing** [1] - 52:11
**text** [2] - 46:15, 46:21
**THE** [88] - 1:1, 1:9, 1:11, 1:14, 2:3, 2:7, 2:12, 2:14, 2:17, 2:18, 3:2, 3:16, 3:21, 8:22, 9:1, 9:12, 10:18, 10:19, 11:2, 11:9, 11:12, 11:17, 11:20, 12:1, 12:3, 15:4, 15:7, 33:16, 33:21, 33:23, 34:12, 34:17, 36:13, 36:18, 39:15, 39:24, 40:8, 40:11, 41:11, 41:14, 41:19, 41:22, 42:1, 42:11, 42:12, 42:19, 42:21, 43:3, 43:8, 44:2, 44:9, 44:11, 44:14, 44:16, 44:18, 45:2, 45:3, 47:9, 48:1, 48:11, 48:12, 48:20, 49:1, 49:3, 49:4, 49:17, 49:18, 50:4, 50:5, 50:14, 51:1, 51:6, 51:13, 51:17, 52:3, 52:11, 52:16, 52:18, 52:20, 52:25, 53:1, 53:10, 53:11, 53:14, 53:15, 53:16, 53:18, 53:22
**themselves** [1] - 16:3
**therefore** [2] - 49:11, 50:5
**third** [5] - 23:13, 23:21, 30:17, 38:14, 45:24
**Thiros** [1] - 1:15
**thoughts** [1] - 39:9
**three** [6] - 20:20, 25:12, 45:10, 48:17, 48:19, 48:20
**throughout** [3] - 46:9, 46:23, 47:3
**throw** [1] - 31:10
**timely** [2] - 50:17, 50:20
**timeout** [2] - 4:20, 4:21
**Title** [9] - 10:11, 24:25, 25:1, 25:16, 29:10, 30:5, 33:19, 38:20, 38:24
**today** [4] - 29:18, 50:10, 53:12, 53:17

**today's** [1] - 47:24
**together** [2] - 39:9, 46:20
**took** [2] - 41:5, 45:24
**tower** [1] - 6:12
**towers** [1] - 46:12
**trail** [1] - 37:17
**transcribed** [1] - 54:6
**Transcript** [1] - 1:21
**transcript** [2] - 53:24, 54:5
**TRANSCRIPT** [1] - 1:8
**transcription** [1] - 1:22
**transportation** [2] - 10:7, 38:4
**transported** [7] - 38:9, 40:9, 41:24, 45:12, 46:6, 47:18, 47:21
**travel** [1] - 23:7
**treated** [1] - 6:15
**trial** [11] - 3:24, 37:4, 37:6, 37:15, 37:16, 38:9, 44:21, 45:5, 45:9, 51:14, 53:8
**tried** [1] - 39:2
**trip** [4] - 45:14, 45:16, 45:19, 45:24
**trips** [1] - 46:5
**trouble** [1] - 44:14
**true** [2] - 2:23, 54:5
**trump** [1] - 21:5
**trust** [1] - 46:24
**try** [1] - 4:9
**trying** [2] - 41:19, 44:11
**Tuesday** [2] - 52:8, 52:12
**turn** [1] - 9:2
**two** [10] - 3:3, 3:13, 4:4, 6:24, 20:19, 22:17, 23:4, 23:15, 31:11, 39:15
**two-level** [3] - 22:17, 23:4, 23:15

## U

**U.S** [2] - 1:12, 32:15
**U.S.C** [2] - 47:5, 47:14
**under** [17] - 5:11, 6:18, 9:6, 9:14, 11:12, 13:9, 18:18, 22:18, 23:4, 23:15, 23:24, 25:2, 25:16, 35:11, 38:14, 39:22, 47:4
**underage** [1] - 19:13
**United** [23] - 2:14, 2:21, 5:24, 7:8, 7:11, 10:11, 10:24, 12:24, 16:1, 17:17, 17:18, 24:25, 25:1, 25:16, 29:10, 29:11, 30:5, 33:19, 38:20, 38:24, 47:8, 47:13, 49:5
**UNITED** [3] - 1:1, 1:3, 1:9
**unless** [4] - 7:14, 7:15, 37:9, 52:21
**unprofessional** [1] - 43:7
**up** [21] - 4:2, 6:12, 14:12, 14:13, 23:23, 26:9, 26:11, 26:12, 26:17, 26:18, 26:19, 26:23, 27:6, 28:3, 28:13, 30:10, 30:20, 37:16, 37:21, 39:25, 46:4
**update** [1] - 25:11

## V

**Valparaiso** [4] - 40:23, 40:24, 41:25, 51:15
**valuable** [1] - 33:12
**venture** [1] - 39:2
**verbally** [1] - 4:12
**versus** [2] - 2:15, 49:5
**via** [1] - 46:11
**victim** [3] - 45:11, 47:18, 47:21
**victims** [4] - 14:21, 15:1, 29:25, 33:16
**victims'** [1] - 29:8
**violate** [2] - 13:10, 31:5
**violated** [5] - 39:20, 43:12, 45:17, 45:22, 46:2
**violation** [3] - 10:10, 38:20, 38:24
**vis-à-vis** [1] - 46:25
**voice** [2] - 4:2, 4:7
**void** [1] - 31:10
**voluntarily** [7] - 8:20, 8:23, 27:14, 28:18, 29:1, 37:9, 41:8
**voluntary** [2] - 48:21, 49:9
**vote** [1] - 33:13
**vs** [1] - 1:4
**vulnerable** [2] - 19:16, 19:17

## W

**waiting** [1] - 51:21
**waive** [5] - 7:7, 7:14, 8:10, 8:12, 37:21
**waived** [2] - 35:14, 37:16
**waiver** [4] - 8:3, 8:22, 27:2, 51:2
**West** [1] - 5:23
**western** [1] - 41:3
**Western** [2] - 16:15, 41:7
**Wexford** [3] - 16:17, 41:3, 41:25
**whatsoever** [1] - 11:9
**WHEREUPON** [11] - 2:4, 2:9, 10:16, 39:13, 40:6, 41:15, 42:9, 42:17, 43:1, 43:25, 48:9
**whisper** [1] - 4:23
**wild** [1] - 26:22
**willfully** [2] - 47:6, 47:11
**willingness** [2] - 32:2, 32:21
**wish** [1] - 49:21
**wishes** [1] - 2:24
**withdraw** [7] - 17:12, 20:21, 21:18, 21:24, 35:20, 35:25, 53:7
**witness** [1] - 46:7
**witnesses** [2] - 37:7, 37:11
**women** [1] - 51:25
**word** [3] - 8:1, 11:3, 12:21
**worded** [1] - 11:5
**words** [3] - 30:10, 38:8, 39:10
**writes** [1] - 6:10
**writing** [2] - 16:22, 50:20
**written** [4] - 3:11, 6:22, 25:21, 49:18

## Y

**year** [7] - 3:7, 3:10, 7:24, 8:25, 33:18, 51:10, 52:23
**years** [9] - 6:2, 15:11, 15:12, 24:9, 38:14, 39:23, 42:14, 45:15, 45:20
**young** [5] - 3:17, 19:13, 19:16, 36:14
**yourself** [3] - 9:8, 37:22, 39:1